Opinion for the court filed by Circuit Judge CLEVENGER, in which Chief Judge RADER and Circuit Judges LOURIE, BRYSON, GAJARSA, PROST, MOORE, and O’MALLEY join.
Dissenting opinion filed by Circuit Judge DYK, in which Circuit Judges NEWMAN, LINN, and REYNA join.
CLEVENGER, Circuit Judge.
This case involves the interpretation and application of the statute of limitations in the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-l to -34 (“Vaccine Act”). The statute of limitations provides that if a vaccine-related injury occurred as a result of the administration of a vaccine, “no petition may be filed for compensation under the Program for [a vaccine-related] injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset ... of such [vaccine-related] injury.” 42 U.S.C. § 300aa-16(a)(2).
Dr. Melissa Cloer received three Hepatitis-B (“Hep-B”) vaccinations in 1996 and 1997. Years later, in 2005, Dr. Cloer filed a claim under the National Vaccine Injury Compensation Program (“Vaccine Program”), established by the Vaccine Act, seeking compensation for a multiple sclerosis (“MS”) injury she alleged was caused by the administration of the vaccine. The Chief Special Master and Court of Federal Claims dismissed Dr. Cloer’s claim as untimely because it was filed more then 36 months after her first symptom of MS occurred in 1997. Cloer v. Sec’y of Health & Human Servs., 85 Fed.Cl. 141 (2008). Dr. Cloer appealed the decision and a panel of this court reversed, ruling in her favor. Cloer v. Sec’y of Health & Human Servs., 603 F.3d 1341 (Fed.Cir.2010), vacated, 399 Fed.Appx. 577 (Fed.Cir.2010). Subsequently, we granted the petition of respondent and appellee Secretary of Health and Human Services (“the government”) to rehear the case en banc, vacated the panel opinion, Cloer, 399 Fed.Appx. at 577, and requested additional briefs from the parties.
Consistent with the plain meaning of the statute, we hold that the statute of limita *1325 tions of the Vaccine Act begins to run on the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the injury claimed by the petitioner. Because Dr. Cloer’s first symptom of MS, recognized as such at the time she suffered the symptom, occurred more than 36 months before the filing of her petition for compensation, her claim is time-barred. We today also reverse our previous holding in Brice v. Secretary of Health & Human Services, 240 F.3d 1367 (Fed.Cir.2001) (“Brice”), which precluded application of the doctrine of equitable tolling in Vaccine Act eases, but reject the ground upon which Dr. Cloer seeks the benefit of equitable tolling in this case. We thus affirm the judgment of the Court of Federal Claims dismissing Dr. Cloer’s claim as untimely.
In Part I below, we briefly address the background against which Congress enacted the Vaccine Act and in particular the statute of limitations chosen by Congress. Part II sets forth the essential facts of the case. In Part III, we discuss the proceedings before the Chief Special Master and the Court of Federal Claims. Part IV states our standard of review. In Part V, we set forth and respond to the three arguments Dr. Cloer presented to the court in her initial briefs and at the initial panel hearing of the case. In Part VI, we address and answer the three specific questions on which we requested additional briefing to the en banc court. Our en banc hearing focused on these questions.
I
In 1986, Congress established the Vaccine Program to provide compensation for vaccine-related injuries and deaths. See 42 U.S.C. § 300aa~10. The Vaccine Act creates a “no-fault” Federal program for compensating injuries that are either presumed or proven to be causally connected to vaccines. The Vaccine Act arose because “the Nation’s efforts to protect its children by preventing disease have been [] a success,” but “[w]hile most of the Nation’s children enjoy greater benefit from immunization programs, a small but significant number have been gravely injured.” H.R.Rep. No. 99-908, at 4 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6345. However, “at least in part as a result of [the] increase in litigation, the prices of vaccines [ ] jumped enormously.” Id. Congress created the Vaccine Program to balance these two primary concerns that the tort system was failing to adequately compensate persons injured from vaccinations that were undergone for the public good and that excessive tort liability was unsus-tainably raising prices and discouraging vaccine manufacturers from remaining in the market. See id. at 3-7, reprinted in 1986 U.S.C.C.A.N. at 6344-48.
Congress noted “for the relatively few who are injured by vaccines — through no fault of their own — the opportunities for redress and restitution [were] limited, time-consuming, expensive, and often unanswered.” Id. at 6, reprinted in 1986 U.S.C.C.A.N. at 6347. In response, Congress created the Vaccine Program to be “simple, and easy to administer” while also being “expeditious and fair.” Id. at 7, 12, reprinted in 1986 U.S.C.C.A.N. at 6348, 6353. To compensate injured persons quickly and fairly, the Vaccine Act exempted petitioners from the tort requirements of demonstrating that a manufacturer was negligent or that a vaccine was defective. Id. at 12-13, reprinted in 1986 U.S.C.C.A.N. at 6353-54. For some injuries which the medical profession at large recognized as especially likely to be caused by vaccine administration, Congress exempted petitioners from the burden of proving causation. Id. In sum, while the Vaccine Act does not prohibit a petitioner from going to state court after completion or unfair delay of the compensation proceedings, the Vaccine Program was intend *1326 ed to “lessen the number of lawsuits against manufacturers” and “provide[ ] relative certainty and generosity” of compensation awards in order to satisfy petitioners in a fair, expeditious, and generous manner.[1] Id.
The legislative history shows that Congress considered alternative statutes of limitation for claims filed in the Vaccine Program. The House of Representatives version, H.R. 1780, introduced on March 27, 1985, provided that “any claim under this title that is filed more than two years after the first manifestation of a vaccine-related injury shall be barred.” National Childhood Vaccine-Injury Compensation Act of 1985, H.R. 1780, 99th Congress § 2112(a) (1985). A subsequent Senate bill, S. 827, introduced on April 2, 1985, took a different approach. Unlike H.R. 1780, S. 827 did not trigger the statute of limitations upon the occurrence of the first manifestation of an injury. Instead, it provided that actions for compensation “shall be barred if the petitioner fails to file the action ... within 5 years after the occurrence of the compensable complication or residual effect of the illness, disability [or] injury.” National Childhood Vaccine Injury Compensation Act of 1985, S. 827, 99th Congress § 2106(a) (1985). In addition, the 5 year statute did not apply at all if a petitioner could demonstrate that she either (a) did not receive the parent information about vaccines required under the bill, or (b) did not know the complication or effect of her injury was compensable under the program. Id. § 2106(b). S. 827 set forth a Vaccine Table, listing specific vaccines, specific injuries, and specific time periods for the first symptom or manifestation of onset of a listed injury after administration of a vaccine. Compensation was required if a petitioner could meet the specified time periods for a listed vaccine and injury. But if a petitioner could not meet the time period requirements, the petitioner could still prevail if “the petitioner demonstrates on the basis of credible evidence” that the injury “suffered by petitioner was caused by a vaccine listed in the Vaccine Injury Table.” Id. § 2105(a)(2). The Senate bill thus incorporated both strict liability and causation in fact liability.
Ultimately, Congress settled on the former of the two approaches. H.R. 5546 (September 18, 1986) followed the approach of H.R. 1780, and provided that if a vaccine-related injury occurred as a result of the administration of a vaccine listed on the Vaccine Injury Table, “no petition may be filed for compensation under the Program after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset ... of such injury.” National Childhood Vaccine Injury Act of 1986, H.R. 5546, 99th Congress § 2116(a)(1)(B) (1986). Both the House and Senate passed H.R. 5546, as incorporated into S. 1744, and the statute of limitations was signed into law on November 14, 1986 as part of the National Childhood Vaccine Injury Act of 1986. Pub.L. No. 99-660, 100 Stat. 3743 (1986).
The legislative record is thus clear that Congress chose to trigger the statute of limitations from the date of the occurrence of the first symptom or manifestation of onset of an injury, not from the date of the injury itself. Further, Congress was alerted to the consequences of its choice. For example, at a July 18, 1985 Senate Hearing before the Committee on Labor and Human Resources, the president of Dissatisfied Parents Together (“DPT”) submitted testimony comparing the different pending *1327 House and Senate bills. See To amend the Public Health Service Act to provide for the compensation of children and others who have sustained vaccine-related injuries, and for other purposes: Hearing on S. 827 before the S. Comm, on Labor and Human Res., 99th Cong. 41 (1985) (statement of Jeffrey H. Schwartz, President of DPT). The testimony noted that under the Senate proposal, S. 827, a claim “must be filed within five years of occurrence of injury” but “[t]his limitation does not apply if claimant did not receive the required parent information packet or did not know the injury was compensable.” Id. at 56. The testimony sharply contrasted this with the pending House proposal, H.R. 1780, under which a claim “must be filed within 2 years after first manifestation of injury” and “[t]his limit applies regardless of when claimant discovered the causal link between the injury and the vaccine.” Id.
From the above, we note that the Vaccine Act, as enacted, reflects a specific decision by Congress that the Act’s statute of limitations would begin to run not on the date of injury (as is sometimes seen in other contexts), but on the date that injury first became symptomatic or manifested.
II
The essential facts of this case are undisputed. Petitioner Melissa Cloer is a physician with MS.[2] Prior to receiving her Hep-B immunizations in 1996 and 1997, Dr. Cloer had no significant medical issues and enjoyed generally good health. Dr. Cloer received her first two doses of Hep-B vaccine without major incident and received her third and final vaccination on April 3, 1997. Approximately one month thereafter she began to experience numbness in her left forearm and hand. She also began to experience what she described as an “electric shock sensation” with “electric like sensations going down the center of her back to both feet with forward head flexion.” This sensation is known as Lhermitte sign, long recognized by the medical profession as a common symptom of MS. See Dorland’s Illustrated Medical Dictionary 1700 (30th ed.2003) (defining Lhermitte sign as the development of sudden, transient, electric-like shocks spreading down the body when the patient flexes the head forward; seen mainly in multiple sclerosis but also in compression and other disorders of the cervical cord).
In 1998, about a year after her final vaccination, Dr. Cloer sought treatment from Dr. Michael Andrew Meyer, an expert in the field of neurology with a specialty in MS. After an MRI examination, Dr. Meyer noted “probable early inactive non-progressive CNS [central nervous system] demyelination/MS,” although he explained that her situation did not meet “formal diagnostic criteria for clinically definite MS.” Cloer, 85 Fed.Cl. at 144. Even so, because the MRI revealed lesions on the white matter of her central nervous system, Dr. Meyer concluded that Dr. Cloer could have MS, Singular Sclerosis, Lyme Disease, and/or acute disseminating encephalomyelitis, along with other de-myelinating processes. Id. at 143. Before the Chief Special Master, Dr. Meyer testified that Dr. Cloer suffered from MS in *1328 1998 because “the first MS related symptom was the [Lhermitte’s] phenomenon that she had in 1997.” Cloer v. Sec’y of the Dep’t of Health & Human Servs., No. 05-1002V, 2008 WL 2275574, at *6 (Fed.Cl.Sp.Mstr.2008) (“Special Master Opinion”), aff'd, 85 Fed.Cl. 141 (2008).
On May 6, 1999, Dr. Cloer received a neurological examination from Dr. Ted Co-lapinto. Cloer, 85 Fed.Cl. at 144. Dr. Colapinto noted Dr. Cloer’s medical history and recorded her complaints of numbness in her face, arms and legs, and her difficulty in walking. Id. He concluded that Dr. Cloer’s symptoms likely represented a demyelinating disease, commenting that “[Dr. Cloer] is having waxing and waning neurological symptoms in multiple areas of her body. I fear that this may likely represent demyelinating disease.” Sp. Mstr. Op., 2008 WL 2275574, at *6. Dr. Cloer continued to suffer from numerous, but somewhat fleeting, symptoms. In May 2004, Dr. Cloer applied for and was awarded monthly Social Security disability benefits. Dr. James P. Metcalf conducted a comprehensive medical examination at the time and noted that appellant “first beg[a]n to have some symptoms consistent with MS in 1997,” although her “symptoms waxed and waned until the fall of 2003 when she beg[a]n to have manifestations of the full blown disease.” Id. at *2.
Dr. Cloer claims that even in 2003 upon receiving a diagnosis of MS she remained unaware of any causal association between the Hep-B vaccine and MS. Dr. Cloer testified that she first became aware of the possible link when she read an editorial and prospective French study in the September 2004 issue of Neurology. Cloer Aff., J. App’x 270-71; see also Robert T. Naismith, M.D. & Anne H. Cross, M.D., Does the hepatitis B vaccine cause multiple sclerosis?, 63 Neurology 772 (Sept. 2004); and Miguel A. Hernán, M.D. et al., Recombinant hepatitis B vaccine and the risk of multiple sclerosis, 63 Neurology 838 (Sept.2004). On October 11, 2004, Dr. Cloer reported to the Vaccine Adverse Event Reporting System that she had experienced numbness and tingling after her first two Hep-B vaccinations, followed by “Lhermitte’s” approximately one month after her third vaccination. Sp. Mstr. Op., 2008 WL 2275574, at *1-2. Dr. Cloer subsequently filed her petition for compensation for a vaccine injury on September 16, 2005. Cloer, 85 Fed.Cl. at 144.
Ill
Before the Chief Special Master, Dr. Cloer did not challenge the evidence that she had suffered symptoms of MS, and likely the manifestation of onset of MS, more than three years before the filing of her petition, thus time-barring her petition. Instead, Dr. Cloer’s primary argument to the Chief Special Master was that the statute of limitations did not begin to run against her until after receipt of a “clinically definite” diagnosis of MS. Dr. Meyer, Dr. Cloer’s treating physician, explained that because Dr. Cloer’s symptoms did not amount to a clinically definite diagnosis of MS until November 2003, Dr. Cloer was unaware of her injury until this time, and thus also could not have been aware that the Hep-B vaccine caused her injury. Since Dr. Cloer’s petition was filed in September 2005, she argued it was filed within the 3 year statute of limitations of when she was first diagnosed with MS. Essentially, Dr. Cloer asked the Chief Special Master to read the phrase “symptom or manifestation of onset” as only triggering upon a symptom or manifestation that is clinically diagnosed as the disease itself.
Relying on precedent of this court, the Chief Special Master rejected Dr. Cloer’s theory and held that the statute of limitations begins to run on the occurrence of *1329 the first symptom or manifestation of onset of the injury that the petitioner alleges has resulted from the vaccination. The Chief Special Master discussed at length our decision in Markovich v. Secretary of Health & Human Services, 477 F.3d 1353 (Fed.Cir.2007), quoting that “the terms of the Vaccine Act demonstrate that Congress intended the limitation period to commence to run prior to the time a petitioner has actual knowledge that the vaccine recipient suffered from an injury that could result in a viable cause of action under the Vaccine Act.” Sp. Mstr. Op., 2008 WL 2275574, at *5 (quoting Markovich, 477 F.3d at 1358). The Chief Special Master expressly dismissed Dr. Cloer’s argument that a “clinically definite” diagnosis is required by Markovich:
Petitioner misreads Markovich. The Court’s holding was that for purposes of § 300aa-16(a)(2), “the first symptom or manifestation of onset” is the “first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Markovich, 477 F.3d at 1360. There is no requirement that the vaccine injury be diagnosed.
Id. at *9.
Just as she did before the Chief Special Master, Dr. Cloer focused her argument at the Court of Federal Claims on her failure to receive a “clinically definite” diagnosis of MS until 2003, elaborating that “because the first set of symptoms may be premature for a definitive diagnosis of a disease, it cannot itself constitute a ‘vaccine injury.’ ” She also pointed to 42 U.S.C. § 300aa-ll(c)(l)(D)(i), which contains a petition content requirement stating that “a petition for compensation ... for a vaccine-related injury ... shall contain ... an affidavit, and supporting documentation, demonstrating that the person ... suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after administration of the vaccine.... ” Because of this requirement, she argued that the statute of limitations does not begin to run until a petitioner has suffered the residual effects or complications for more than 6 months after administration of the vaccine. She alleged as a matter of fact that she did not meet this requirement until late in 2003, which if true, would bring her 2005 petition within the statute of limitations. Finally, she asked for relief by way of equitable tolling, notwithstanding our opinion in Brice that equitable tolling is not available under the Vaccine Act. She sought relief under equitable tolling because she was not diagnosed with MS until 2003 and there was no reason for her to suspect a vaccine link to MS until 2004. Cloer, 85 Fed.Cl. at 145, 149.
The Court of Federal Claims rejected Dr. Cloer’s arguments. The court understood Dr. Cloer’s primary argument to be that a “vaccine-related” injury could not occur based on the first occurrence of a symptom of the injury, but instead would arise from “a physician’s ultimate diagnosis” that the “vaccine caused the complained-of specific injury.” Id. at 149. The court held her argument “contrary to Markovich, which held that the limitations period begins to run at the first occurrence of a symptom even though an exact diagnosis may be impossible until some future date when more symptoms or medical data are forthcoming.” Id. Referring to the trigger for the statute of limitations, the court quoted from Markovich: “Congress intended the limitations period to commence to run prior to the time a petitioner has actual knowledge that the vaccine recipient suffered from an injury that could result in a viable cause of action under the Vaccine Act.” Id. (quoting Markovich, 477 F.3d at 1358). The court also relied on the observation in Brice that the statute begins to run “upon the first symptom or manifestation of the onset of injury, even if the petitioner would not have known at *1330 that time that the vaccine had caused an injury.” Brice, 240 F.3d at 1373.
The court held that the Lhermitte sign in 1997 was the first symptom of Dr. Cloer’s MS and triggered the statute of limitations, Cloer, 85 Fed.Cl. at 147-49, which the court held is unaffected by the 6 month requirement in 42 U.S.C. § 300aa-11(c)(1)(D)(i). The court found Dr. Cloer’s petition is time barred and affirmed the Chief Special Master. The court also noted that Brice bars Dr. Cloer’s request for relief by way of equitable tolling of the statute of limitations. Id. at 149, 152.
IV
We review the Special Master’s decision under the same arbitrary and capricious standard as did the Court of Federal Claims. 42 U.S.C. § 300a-129(e)(2)(B); Althen v. Sec’y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed.Cir.2005). We owe no deference on questions of law, Whitecotton ex rel. Whitecotton v. Sec’y of Health & Human Servs., 81 F.3d 1099, 1106 (Fed.Cir.1996), but review factual findings for clear error, Hines ex rel. Sevier v. Sec’y of Health & Human Servs., 940 F.2d 1518, 1523 (Fed.Cir.1991). In this case we are concerned with issues of statutory interpretation: what constitutes a “vaccine-related injury” and what event triggers the running of the Vaccine Act’s statute of limitations.
V
In her initial appeal briefs, Dr. Cloer abandons her argument that no vaccine-related injury can occur before a clinically definite diagnosis is made. Instead, she argues that a “vaccine-related injury” for purposes of the Vaccine Act and its statute of limitations cannot occur until the medical community at large understands and recognizes the causal relationship between the claimed injury and the administration of a vaccine. Dr. Cloer alleges that because an injury cannot be alleged as “vaccine-related” until after this recognition, any other interpretation of the statute of limitations would be unfair. Dr. Cloer also argues that the statute of limitations should not trigger until after a petitioner has suffered from six months of consistent, clinically-related symptoms, citing 42 U.S.C. § 300aa-ll(c)(l)(D)(i). Otherwise, because a petitioner is required to attest, as a petition requirement, to residual effects or complications lasting “more than 6 months after the administration of the vaccine,” Dr. Cloer argues the statute of limitations would be unfairly reduced to less than 36 months. Finally, Dr. Cloer requests that this court reconsider the holding in Brice that equitable tolling is not available under the Vaccine Act.
As noted above, the panel opinion ruled in Dr. Cloer’s favor, accepting her argument that the statute of limitations begins to run upon formation of a consensus in the medical community that a vaccine causes the injury claimed. The panel did not reach Dr. Cloer’s other arguments. Because the panel opinion is vacated, we respond to her original arguments in sub-parts A, B, and C below.
A
We first address Dr. Cloer’s primary argument on appeal that a “vaccine-related” injury only arises upon a medically established causal link between an injury and the vaccine in question. Our analysis must begin with the plain language of the statute. The Vaccine Act states that “if a vaccine-related injury or death occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset” of injury. 42 U.S.C. § 300aa-16(a)(2). The plain language of the Vaccine Act thus requires injured parties to file Vaccine Program petitions within 36 months of the date of *1331 the first symptom or manifestation of onset of the “vaccine-related injury.”
The Act defines “vaccine-related injury or death” as:
[A]n illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine.
42 U.S.C. § 300aa-33(5). As both Dr. Cloer and the government recognize, this definition does not provide definitive guidance for us on the specific argument put forward by Dr. Cloer. However, “[a]s a rule, a definition which declares what a term ‘means’ ... excludes any meaning that is not stated.” Burgess v. United States, 553 U.S. 124, 130, 128 S.Ct. 1572, 170 L.Ed.2d 478 (2008) (quoting Colautti v. Franklin, 439 U.S. 379, 392-93 n. 10, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979)). Thus, we begin with a hesitation to read a causal link requirement into the term when no such link is included in the explicit statutory definition. Moreover, “[a] term appearing in several places in a statutory text is generally read the same way each time it appears.” Ratzlaf v. United States, 510 U.S. 135, 143, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). As the term “vaccine-related injury” appears throughout the Vaccine Act, we must analyze the effects of adopting Dr. Cloer’s contention that the term always requires recognition in the medical community of a causal link between the vaccine and the injury.
The Vaccine Act provides a Vaccine Injury Table of vaccines and the injuries commonly associated with the use of each vaccine. See 42 U.S.C. § 300aa-14; see also 42 C.F.R. § 100.3(a) (containing updated Table). For injuries listed in the Table, generally referred to as “Table injuries,” a petitioner need only prove that the first symptom or manifestation of onset occurred within the time period after vaccine administration set forth in the Vaccine Injury Table in order to receive compensation, see 42 U.S.C. § 300aa-11(c)(1)(C)(i), unless the government can prove that a factor unrelated to the vaccination actually caused the illness, disability, or condition. See Pafford v. Sec’y of Health & Human Servs., 451 F.3d 1352, 1355 (Fed.Cir.2006) (citing 42 U.S.C. § 300aa-13(a)(l)(A),(B)). For these injuries recognized by the medical community as linked to vaccine administration, Congress eliminated the petitioner’s burdensome proof requirement. For “non-Table injuries,” a petitioner must prove the injury was caused by the vaccine. See 42 U.S.C. § 300aa-11(c)(1)(C)(ii).
A “vaccine-related injury” is the subject of the petition for compensation in both Table and non-Table cases. For Table injury cases, the statute specifically defines for each vaccine the “vaccine-related” injuries for which compensation is assured. For example, a petitioner who suffers from a symptom of an anaphylactic shock injury within four hours of receiving a DTaP vaccine is presumed to have been injured by the vaccine. See 42 C.F.R. § 100.3(a). But for non-Table injuries, a petitioner must file an affidavit and supporting documentation demonstrating that the “vaccine-related injury” for which compensation is sought was caused by a vaccine.[3]
*1332 The statute of limitations for the Act uses the same “vaccine-related injury” terminology.
In the case of ... a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury....
42 U.S.C. § 300aa-16(a)(2) (emphasis added).
Dr. Cloer would read “vaccine-related injury” throughout the Vaccine Act to require that the alleged injury must be objectively recognized by the medical community as related to the vaccine before it can be deemed a “vaccine-related injury.” Accordingly, the statute of limitations would not begin to run on prospective petitioners until after this recognition is established. However, the statute is clear that only “[a] person who has sustained a vaccine-related injury ... may, if the person meets the requirements of subsection (c)(1) of this section [listing the required elements of a petition], file a petition for compensation under the Program.” 42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added). Under Dr. Cloer’s view that no vaccine-related injury exists until there is consensus in the medical community of a causal link between an injury and a vaccine, the key element of the petition for compensation — the vaccine injury — does not arise until the requisite medical consensus exists. For example, in this case, it is agreed that even now there is not medical consensus of a causal link between the Hep-B vaccine and MS. Thus, under Dr. Cloer’s definition of vaccine-related injury, she, like the great majority of non-Table injury petitioners, would lack standing to file a petition until the requisite medical consensus arises. Any construction that would result in a party suffering from a non-Table injury to be unable to file a petition because the alleged injury is not recognized by the medical community at large cannot be what Congress intended.[4]
*1333 Further, settled law establishes a firm default rule that a cause of action arises at the same time the statute of limitations begins to run on the cause. See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson, 545 U.S. 409, 418, 125 S.Ct. 2444, 162 L.Ed.2d 390 (2005) (“Congress generally drafts statutes of limitations to begin when the cause of action accrues.”). The Supreme Court has recognized that Congress is free to provide the “odd result” of a cause of action that arises at a time different from the beginning of a statute of limitations, see Reiter v. Cooper, 507 U.S. 258, 267, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), but only by explicitly rejecting the default rule. See Dodd v. United States, 545 U.S. 353, 359-60, 125 S.Ct. 2478, 162 L.Ed.2d 343 (2005). Under Dr. Cloer’s interpretation of a vaccine-related injury, her claim for compensation would accrue (thus letting her petition go forward) before medical consensus as to causation exists. To succeed, she must show that Congress meant to divorce the date of accrual of her cause of action from the date that the statute of limitations begins to run. She faces the heavy burden of proving that Congress intended the odd result of breaching the firm default rule. Nothing in the text of the Vaccine Act demonstrates that Congress made a deliberate choice to allow a cause of action for a vaccine-related injury to accrue before the Vaccine Act’s statute of limitations begins to run.[5]
*1334 In addition, we note an unintended result that would occur were we to accept Dr. Cloer’s argument that the statute of limitations for a non-Table injury does not begin to run until the medical community at large recognizes a causal link between a vaccine and a claimed injury. Congress recognized that the Vaccine Injury Table could be revised such that a person not previously eligible for compensation might become eligible to seek compensation for the newly-recognized Table Injury. In such instances, Congress wrote a special statute of limitations that permits a claim for compensation under the revised Vaccine Injury Table if a vaccine-related death or injury occurred less than 8 years before the revision of the Vaccine Injury Table and the claim is filed within 2 years after the effective date of the revision. See 42 U.S.C. § 300aa-16(b). If Dr. Cloer’s trigger for the statute of limitations for a non-Table injury were accepted, she and those similarly situated would enjoy a more generous statute of limitations than Congress provided for Table Injury petitioners, for whom causation is presumed. We do not think Congress would have intended such a result.
The correct interpretation of the term “vaccine-related injury” is plain from the language of the statutory provisions that set forth the statute of limitations and the requirements for a petition. For Table injury cases where causation is presumed, the vaccine-related injury is the injury specified in the Vaccine Injury Table for which a petitioner seeks compensation. For non-Table injury cases where the petitioner must establish causation, the vaccine-related injury is the injury which the petitioner avers is caused by the vaccine. The statute of limitations on its face requires a petition for compensation to be filed within 36 months after the date of occurrence of the first symptom or manifestation of onset of vaccine-related injury. The statutory language, however, begs the question of the test for recognition of the existence of a symptom or manifestation of onset of an injury. In short, who decides if a symptom or manifestation of an injury has occurred? We were faced with, and decided, that question in Markovich. 477 F.3d at 1360.
In that case, the parents of a child sought compensation for seizure disorders suffered by the child after administration of a vaccine. On the day of administration of the vaccine, July 10, 2000, the child began to rapidly blink her eyes. The eye-blinking episodes continued for more than a month and culminated in a grand mal seizure. Id. at 1354-55. Under recognized standards of the medical profession at large, the eye-blinking episodes were symptoms of the seizure activity for which compensation was sought. The government argued that the first of such symptoms, on July 10, 2000, triggered the statute of limitations and required dismissal of the petition, which had been filed more than three years from the July 10 date. The petitioners argued for a subjective test to determine when the first symptom occurs. Accordingly, they argued that the symptom of the injury had to be understood as such by the parents. Because they thought the first blinking episodes were simply everyday events meaning the child was tired, they argued that the statute of limitations did not begin to run until August 30, 2010, when they became aware that their child had an injury. Under their view of how a symptom should be *1335 determined, their petition was timely. Id. at 1356-57.
Markovich thus resolved the dispute:
A subjective standard that focuses on the parent’s view would result in an uneven and perhaps overly broad application of the statute of limitations dependent entirely on the subjective perceptions of lay persons having widely varying degrees of medical awareness or training. On the other hand, an objective standard that focuses on the recognized standards of the medical profession at large treats petitioners equally, without regard to their individual medical awareness. An objective standard is consistent with the statutory requirement that the first symptom or manifestation of onset of the injury begins the running of the statute of limitations, as well as the cases ... that have consistently construed the Vaccine Act to include subtle symptoms that would be recognizable to the medical profession at large but not necessarily to the parent.
477 F.3d at 1360.
We thus held that the first symptom or manifestation of onset of a vaccine-related injury is “the first event objectively recognizable as a sign of a vaccine injury by the medical profession at large.” Id. The analysis and conclusion in Markovich is correct. The statute of limitations in the Vaccine Act begins to run on the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury for which compensation is sought, and the symptom or manifestation of onset must be recognized as such by the medical profession at large.
B
In order to file a petition, a claimant must attest, inter alia, that she has “suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine.” 42 U.S.C. § 300aa-ll(c)(l)(D)(i). Dr. Cloer argues that because her symptoms were fleeting, she could never have met this requirement until late 2003 when her symptoms were continuous and related enough to be deemed “residual effects or complications” of her Hep-B vaccinations. The government responds that the petition requirements are wholly separate from the statute of limitations and should not be read to extend the filing date of the petition beyond 36 months.
We agree with the government that the 6 month requirement is a condition precedent to filing a petition for compensation, not a limitation on the 3 year statute of limitations. The 6 month provision is a petition content requirement to which no reference is made in the statute of limitations. Had Congress intended to adjust the statute of limitations in light of the petition content requirement, we think it would have done so in the statute of limitations. We thus agree with the Court of Federal Claims that there is no support for Dr. Cloer’s argument in the text of the Act, nor any in the case law. Congress included the 6 month petition requirement “to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine.” H.R.Rep. No. 100-391(1), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313-1, - 373. Thus, this provision, along with the other petition requirements, is intended to restrict eligibility to the compensation program, not to act as a statutory tolling mechanism for the statute of limitations.
C
Finally, Dr. Cloer requested in her initial briefs that equitable tolling be made available and applied to the facts of her case, in spite of the binding precedent of Brice. Although the argument was reject *1336 ed by the Chief Special Master and the Court of Federal Claims, and not addressed by the panel which initially heard the case, the en banc court decided to reconsider Brice through the lens of specific questions that were put to the parties. Equitable tolling is considered below, in parts VLB and C.
VI
In an October 25, 2010 order, the court vacated its May 6, 2010 opinion and reinstated the appeal. We requested the parties to file new briefs addressing the following questions:
(a) Should the discovery rule, used for example in medical malpractice cases, see United States v. Kubrick, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) and TRW, Inc. v. Andrews, 534 U.S. 19, 27-28, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001), apply to 42 U.S.C. § 300aa-16(a)(2) so that the statute of limitations does not begin to run until the claimant has knowledge or reason to know of the cause of her injury?
(b) Should Brice v. Secretary of Health & Human Services, 240 F.3d 1367 (Fed.Cir.2001) be overruled to permit equitable tolling of 42 U.S.C. § 300aa-16(a)(2)?
(c) If equitable tolling is permitted, do the circumstances of this case support equitable tolling?
Upon reviewing the briefs of the parties the court heard argument on May 10, 2011. We now address each question put to the parties.
A
Whether to incorporate a discovery rule in the Vaccine Act’s statute of limitations requires us to decide when the statute of limitations is triggered. Absent a discovery rule, the plain words of the statute trigger the statute of limitations on the date of the first symptom or manifestation of onset of the injury claimed. If, instead, the statute of limitations does not begin to run until a petitioner knows or has reason to know a vaccine has caused her vaccine-related injury, the plain words of the statute must be adjusted. Whether or not to incorporate a discovery rule boils down to a matter of interpretation of the statute of limitations.[6]
As previously stated, the statute of limitations contained in the Vaccine Act reads: In the case of—
(2) a vaccine set forth in the Vaccine Injury Table which is administered after October 1,1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury[.]
42 U.S.C. § 300aa-16(a). Dr. Cloer makes two arguments for why a discovery rule should be read into the Vaccine Act. First, she argues that the text of the statute of limitations amounts to a discovery accrual rule requiring a claimant to know both the *1337 fact and the cause of her injury. Second, she argues that the language of the Vaccine Act is compatible with an implied discovery accrual rule. See TRW, 534 U.S. at 27, 122 S.Ct. 441 (“[L]ower federal courts generally apply a discovery accrual rule when a statute is silent on the issue.”) (quotation marks omitted); see also Rotella v. Wood, 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000) (“Federal courts, to be sure, generally apply a discovery accrual rule when a statute is silent on the issue.”).
For the reasons that follow, we conclude that the Vaccine Act does not itself contain a discovery rule, and, applying the relevant analytic tools provided by the Supreme Court, conclude also that a discovery rule cannot be read by implication into the Vaccine Act’s statute of limitations. We first address Dr. Cloer’s argument that the Act contains its own discovery rule.
Dr. Cloer specifically highlights the phrase “if a vaccine-related injury occurred as a result of the administration of [the] vaccine” in the statute of limitations. Dr. Cloer argues that the inclusion of this phrase in the statute means that a non-Table injury claim does not accrue until the claimant has knowledge that the injury “occurred as a result of the administration of [the] vaccine.” Otherwise, Dr. Cloer posits, the phrase would be superfluous. The government counters that the phrase is essential to breathe meaning into the term “vaccine-related injury” as used in the statute of limitations. The government reads the accrual of a non-Table injury (and thus the beginning of the statute of limitations) to arise on the “date of occurrence of the first symptom or manifestation of onset” of the injury the claimant alleges to be “vaccine-related” for having “occurred as a result of the administration of [the] vaccine.”
As an initial matter, Dr. Cloer is correct that “we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 112, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). However, the clearly dominant language in the statute of limitations is “the date of occurrence of the first symptom or manifestation of onset.” As the Supreme Court has noted, the date of the occurrence of the first symptom is forceful — “[t]here cannot be two first symptoms or onsets of the same injury” — and the first symptom “signals] the injury’s onset.” Shalala v. Whitecotton, 514 U.S. 268, 274, 115 S.Ct. 1477, 131 L.Ed.2d 374 (1995). We do not think that dominant phrase can be overcome by inferring a discovery requirement from the phrase “occurred as a result of the administration of [the] vaccine.” We therefore reject Dr. Cloer’s argument that the statute of limitations already contains a discovery rule that would key the accrual of a non-Table injury claim and the beginning of the statute of limitations to a claimant’s discovery that the vaccine caused her injury.[7]
We now turn to whether the Vaccine Act statute of limitations is susceptible to an implied discovery rule. As a preliminary matter, we note that the Supreme Court has left open the question of whether a presumption exists that “all federal stat *1338 utes of limitations, regardless of context, incorporate a general discovery rule unless Congress has expressly legislated otherwise.” TRW, 534 U.S. at 27,122 S.Ct. 441. Nonetheless, the Supreme Court noted in TRW, id., that it had held in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), that “where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute of limitations does not begin to run until the fraud is discovered.” 534 U.S. at 27, 122 S.Ct. 441 (quoting Holmberg, 327 U.S. at 397, 66 S.Ct. 582). The Supreme Court proceeded to note in TRW that “[t]he only other cases in which we have recognized a prevailing discovery rule, moreover, were decided in two contexts, latent disease and medical malpractice, ‘where the cry for [such a] rule is loudest.’” Id. (quoting Rotella, 528 U.S. at 555, 120 S.Ct. 1075) (second alteration in original). As the guide for deciding whether to read a discovery rule into a federal statute of limitations, the Supreme Court held in TRW that Congress can “convey its refusal to adopt a discovery rule ... by implication from the structure or text of the particular statute.” Id. at 27-28, 122 S.Ct. 441.
The question we must decide is whether, in the context of a no-fault vaccine-injury remedy statute Congress, in the text of the Vaccine Act and considering its overall structure, conveyed its refusal to permit an implied discovery rule. We have already held that Congress did not write an explicit discovery rule into the statute.
Congress enacted the Vaccine Act statute of limitations against the backdrop of state law providing remedies for physical injuries. Indeed, Dr. Cloer points to that body of state law, noting that virtually all of the state laws on the subject incorporate discovery rules into their statutes of limitations. Those discovery rules look to the knowledge of a plaintiff to determine the date upon which the statute of limitations begins to run. From this body of state law, Dr. Cloer argues that Congress must have meant for the Vaccine Act statute of limitations to incorporate a discovery rule.
The contemporaneous existence of that body of state law, however, cuts against Dr. Cloer. First, that body of state law, dealing with fault liability, keys the accrual of the cause of action to the occurrence of the injury for which relief is sought. See, e.g., Colo.Rev.Stat. §§ 13-80-106, 13-80-108 (enacting discovery rule for cause of action otherwise accruing at injury). As with the Federal Tort Claims Act, 28 U.S.C. § 2401(b), those state laws are understood to trigger their statutes of limitations upon the discovery of the existence and the cause of the injury. See United States v. Kubrick, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). We may presume that Congress is generally aware of the consequences of enacting a statute of limitations that runs from the date of occurrence of an injury. As noted above, Congress was presented the option of enacting a statute of limitations that would have run from the knowledge of the occurrence of a vaccine-related injury. See S. 827, 99th Congress § 2106(a) (1985). Had it done so, the parallel between state law and the Vaccine Act sought by Dr. Cloer would have been plausible. Instead, Congress made the deliberate choice to trigger the Vaccine Act statute of limitations from the date of occurrence of the first symptom or manifestation of the injury for which relief is sought, an event that does not depend on the knowledge of a petitioner as to the cause of an injury. This trigger confirms that a Vaccine Act cause of action accrues on that same date, not at a later date when a petitioner may have knowledge that the vaccine caused the injury. We need not decide whether the choice of Congress to bypass a statute of *1339 limitations comparable to the large body of state law shows a firm intent to bar, without more, a discovery rule in the Vaccine Act statute of limitations. But the choice made by Congress surely goes a long way to showing that Congress “conveyed its refusal to adopt a discovery rule.”[8] TRW, 534 U.S. at 27, 122 S.Ct. 441.
Examination of the overall structure of the Vaccine Act and its text buttresses our conclusion that a discovery rule cannot be read into the Vaccine Act statute of limitations. First and foremost, Congress selected a specific textual calendar date to trigger the statute of limitations. Nothing in that date, the first occasion of a symptom or manifestation of onset of the injury for which compensation is sought, asks for information about how much knowledge a petitioner had. It is a statutory date that does not depend on when a petitioner knew or reasonably should have known anything adverse about her condition. We have recognized this in our previous cases. See Markovich, 477 F.3d at 1357 (rejecting the argument that eye blinking episodes were insufficient to start the statute of limitations because “the eye blinking symptom could not reasonably alert the Markoviches that anything was wrong.”); Wilkerson v. Sec’y of Health & Human Sens., 593 F.3d 1343, 1345-46 (Fed.Cir. 2010) (rejecting a subjective standard for determining when the limitations period began to run based on the parent’s perception and confirming an objective standard based on the medical profession’s recognition of the existence of a symptom or manifestation of an injury).
The date of the first symptom or manifestation resonates throughout the Vaccine Act. For example, with regard to Table injury cases, the petitioner is supplied in the Vaccine Injury Table with a list of symptoms or manifestations and a list of dates associated with the time of occurrence of each of those symptoms or manifestations. The Table Injury petitioner uses the same single statute of limitations as a non-Table injury claimant, and has 36 months from the date of the first symptom or manifestation in which to file a petition for compensation.
As noted in Part I above, a significant motive for Congress in enacting the Vaccine Program was to provide an efficient, simple, and easy to administer system for processing vaccine injury claims. We think the triggering mechanism selected by Congress for the statute of limitations promotes those goals, whereas a discovery rule may not. Once it is understood that Congress intended a specific date, rather than a date that would vary depending on the knowledge of a petitioner, to trigger the statute of limitations, it is easily understood that time-consuming debates over *1340 when the statute of limitations started to run would not likely occur in processing a petition for compensation. When the date a symptom first occurred might sometimes be in issue, but the more complicated inquiry about whether petitioner knew or reasonably should have known of a causal connection only arises under Dr. Cloer’s view of the statute. Further, “the date of occurrence of the first symptom or manifestation of onset” treats all petitioners equally, whereas under a discovery rule, the otherwise neutral 36 month time limit will vary from petitioner to petitioner.
A discovery rule necessarily adjusts the beginning of a statute of limitations to the circumstances of an individual case. The rule typically asks when a plaintiff knew or reasonably should have known of enough facts to proceed with her case. Kubrick, 444 U.S. at 120-22, 100 S.Ct. 352; see also Kach v. Hose, 589 F.3d 626, 634-35 (3d Cir.2009); Rakes v. United States, 442 F.3d 7, 20 (1st Cir.2006); Fries v. Chicago & Nw. Transp. Co., 909 F.2d 1092, 1095 (7th Cir.1990); 2 Calvin W. Corman, Limitation of Actions § 11.1.1 (1991). The discovery rule tethers accrual of the cause, and with it the start of the limitations period, to the knowledge of the plaintiff or of a reasonable actor in the plaintiffs position. The discovery rule is therefore an inherently personal, plaintiff-specific one. As a matter of both practice and design, a discovery rule treats different plaintiffs differently based on their personal circumstances. Cascone v. United States, 370 F.3d 95, 104 (1st Cir.2004) (“The issue is whether a reasonable person similarly situated to the plaintiff would have known the necessary facts.”).
In our view the personal, plaintiff-oriented approach of a discovery rule is antithetical to the simple, symptom-keyed test expressly required by the Vaccine Act’s text. Such a conclusion is not surprising in light of the Vaccine Act’s structure as a simplified no-fault administrative scheme. We note further that this conclusion is consistent with Congress’s expressed desire that the Vaccine Act be “simple, and easy to administer” as well as “expeditious and fair.” See supra part I (discussing legislative history). Under the Vaccine Act as written, two plaintiffs who receive the same vaccine on the same day, and who experience the same medically-recognized symptom of a vaccine-related injury shortly afterwards, also on the same day, begin their limitations periods simultaneously. But under the more capacious analysis of the discovery rule, the start of the limitations period could vary widely based on each plaintiffs personal circumstances. We think these two results so different as to make implication of a discovery rule fundamentally incompatible with the text Congress enacted.
We therefore hold that Congress “conveyed its refusal to adopt a discovery rule ... by implication from the text and structure” of the Vaccine Act. TRW, 534 U.S. at 27-28, 122 S.Ct. 441. The statute of limitations begins to run on a specific statutory date: the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury recognized as such by the medical profession at large.
B
In our second question for en banc briefing, we asked if Brice should be overruled to permit equitable tolling of 42 U.S.C. § 300aa-16(a)(2). We now answer that question in the affirmative. We therefore overrule Brice and hold that equitable tolling applies to the Vaccine Act. In Part C below, we reach and decide the ground on which Dr. Cloer seeks equitable tolling.
The Supreme Court observed in John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133, 128 S.Ct. 750, 169 L.Ed.2d *1341 591 (2008), that “[m]ost statutes of limitations seek primarily to protect defendants against stale or unduly delayed claims.” Limitations statutes of that nature do not implicate the jurisdiction of a court, and thus do not preclude relief from time filing limits by way of equitable tolling. The time limits in other statutes, the Supreme Court noted, have been read in the light of the statute’s overall purpose as “more absolute, say as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period.” Id. at 133-34, 128 S.Ct. 750. As examples of such more absolute statutes, the Supreme Court mentioned statutes that “achieve a broader system-related goal, such as facilitating the administration of claims, see, e.g., United States v. Brockamp, 519 U.S. 347, 352-353, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), limiting the scope of a governmental waiver of sovereign immunity, see, e.g., United States v. Dalm, 494 U.S. 596, 609-10, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), or promoting judicial efficiency, see, e.g., Bowles v. Russell, 551 U.S. 205, 210-13, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007).” John R. Sand & Gravel, 552 U.S. at 133, 128 S.Ct. 750. Whether a particular statute of limitations is treated as “jurisdictional” thus depends on the overall context of the statute. The term “jurisdictional” has no notable meaning in such contextual inquiries and is merely convenient shorthand for statutory limits that are absolute and require a court to consider timeliness questions without reference to equitable considerations. Id. at 133-34, 128 S.Ct. 750. The “jurisdictional” determination thus merges into the question of whether Congress intended to allow equitable tolling of the Vaccine Act’s statute of limitations.[9]
Any analysis of whether equitable tolling lies against a federal statute of limitations begins with Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). In that case, the Su *1342 preme Court established a presumption that all federal statutes of limitations are amenable to equitable tolling absent provision by Congress to the contrary. Id. at 95-96, 111 S.Ct. 458. Irwin left for decision in later cases whether when enacting specific statutes Congress rebutted the basic presumption in favor of equitable tolling. A leading case providing guidance on Congressional rebuttal is United States v. Brockamp, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). Brockamp framed the rebuttal question as “whether there is good reason to believe that Congress did not want equitable tolling to apply.” 519 U.S. at 350, 117 S.Ct. 849. Brockamp detailed five factors for use in determining whether Congress rebutted the basic Irwin presumption: the statute’s detail, its technical language, its multiple iteration of the limitations period, its explicit inclusion of exceptions, and its underlying subject matter. See Brockamp, 519 U.S. at 350-52, 117 S.Ct. 849. These same factors were considered by this court when it previously decided that equitable tolling is not available. Indeed, at that time and again in this case, the government agrees that only two of the factors cut against equitable tolling. First, the government argues that the Vaccine Act includes two specific exceptions to the basic 36 month statute of limitations. And second, the government argues that the Vaccine Act’s detail as a whole reveals multiple strict deadlines.
The first exception to which the government refers provides for the situation when a petition for compensation is improperly filed as a tort claim in a state or federal court. Because a person seeking compensation for a vaccine-related injury must first file under the Vaccine Program, 42 U.S.C. § 300aa-ll(a)(2), previous court filings elsewhere are improper and must be dismissed. The date such a dismissed action was filed “shall, for purposes of the limitations of actions prescribed by section 300aa-16 of this title [the 36 month period], be considered the date the petition was filed if the petition was filed within one year of the date of the dismissal of the civil action.” 42 U.S.C. § 300aa-11(a)(2)(B).[10] This exception was relied on in Brice as a reason to deny equitable tolling.
The second exception to the basic limitations statute raised by the government concerns the provision in the Vaccine Act that deals with petitions for compensation filed after the Vaccine Injury Table is revised. For example, a person who was not eligible for compensation before the Vaccine Injury Table revision may file a petition for compensation under the revision, provided the petitioner’s injury occurred no more than 8 years before the date of the revision and the petition is filed not later than 2 years after the effective date of the revision. 42 U.S.C. § 300aa-16(b). This exception was not discussed in Brice.
As for the overall structure of the Vaccine Act, the government points to the many strict time deadlines that regulate cases once they are started. In particular, the government points to the need for special masters to decide cases within 240 days after the filing of a petition, and the bar to suspension of proceedings for more than 150 days. See 42 U.S.C. § 300aa-12(d)(3)(A)(ii),(C).
The correct analysis of the government’s “exceptions” points is informed by the Su *1343 preme Court’s recent decision in Holland v. Florida, — U.S.-, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), of which the Brice, court did not have the benefit. Holland answered in the affirmative whether the one-year statute of limitations on petitions for federal habeas corpus relief by state, prisoners under the Antiterrorism and Effective Death Penalty Act of 1996 (“AED-PA”) is subject to equitable tolling. The respondent in Holland argued that the AEDPA should be interpreted to foreclose equitable tolling because the statute has explicit exceptions to the basic statute of limitations. 130 S.Ct. at 2561. The Supreme Court “eoncedefd] that [the AED-PA] is silent as to equitable tolling while containing one provision that expressly refers to a different kind of tolling.” Id. at 2561-62 (citing the “exception” as 28 U.S.C. § 2244(d)(2), which does not count against the one-year statute the time a petitioner has a pending request for post-conviction relief, because the federal petition cannot be brought before exhaustion of state remedies). The Supreme Court held that Congress had to balance the interaction of state and federal participation in the underlying subject matter, and the “exception” thus is a special need, and as such negates the significance of the special exception for Brockamp ' factor analysis purposes. 130 S.Ct. at 2562.
Holland teaches that exceptions to statutes of limitations do not necessarily rebut the bedrock Irwin presumption in favor of equitable tolling. Exceptions, instead, must be understood in context, for, as in Holland, an exception may signal a beneficent Congressional act, not a rebuttal of the Irwin presumption. In the context of the Vaccine Act, the “exception” seen in 42 U.S.C. § 300aa-ll(a)(2)(B) does not counsel against equitable tolling.
As noted above, before a tort suit can be brought for damages, a claimant must seek relief under the Vaccine Program. If a would-be petitioner mistakenly first files a traditional tort suit, the tort suit must be dismissed. 42 U.S.C. § 300aa-ll(a)(2)(B). Recognizing that the result of a rule requiring dismissal of premature suits could leave a petitioner nonsuited due to different statutes of limitations for state torts and the Vaccine Act, Congress included a special need provision that would allow the petitioner to benefit from the earlier state filing date when faced with the Vaccine Act’s statute of limitations. Similarly, Congress included a provision that tolls state statutes of limitations during the pendency of Vaccine Program action. See 42 U.S.C. § 300aa-16(e). Thus, Congress created a system that provides for a petitioner to have equal access to the Vaccine Program and to state remedies once any filing occurs regardless of the forum.
We think it clear that Congress had a specific concern, unrelated to equitable tolling considerations, in enacting the “exception” in 42 U.S.C. § 300aa-ll(a)(2)(B). This provision shows Congressional response to possible confusion regarding the new no-fault compensation system by minimizing the consequence of certain errors. This “exception” is driven by a special need, as was the case in Holland, and does not show a desire by Congress to bar equitable tolling.
We turn now to the statutory provision that permits a petition for compensation to be filed upon revisions to the Vaccine Injury Table. We reject the government’s argument that this “exception” bars equitable tolling of the statute of limitations. This statutory provision is aimed at scientific advances in medicine that enable the establishment of new Table Injuries, for which causation will be presumed. Individual factual circumstances, the grist of equitable tolling claims, played no role in enactment of this provision. We think equitable tolling concepts lie in a different world from the opening to all vaccine re *1344 cipients of a claim due to new medical knowledge. This “exception” too is easily understood as a special need provision to address a Vaccine Program that moves forward in time with advances in medicine. Equitable tolling is not defeated by the wisdom of Congress to see into the future.
The remaining factor urged by the government to support its view that Congress rebutted the Irwin presumption concerns the detailed time limits governing processing of cases under the Vaccine Program. Those factors, identified above, relate to the speed with which the special master must move in processing cases. Such limits are tight, to be sure, and they serve to meet the Congressional goal of swift and efficient disposition of claims once a petition is filed. These time limits are designed to benefit the petitioner. If a petitioner were to cause some delay in processing of her petition because the government resists her request for equitable tolling, she could not be heard to complain if the time to decide her claim is greater than a petitioner who filed her petition within the 36 month limit. And any delay in getting the merits of a petition underway because of equitable tolling is no greater, if as great, as the delay that would be inherent in resolving disputes about whether a petitioner reasonably should have known of a causal link between her injury and a vaccination. Further, the 36 month period comports with traditional tort remedy statutes of limitations, and is not overly generous. See United States v. Beggerly, 524 U.S. 38, 48-49, 118 S.Ct. 1862, 141 L.Ed.2d 32 (1998) (denying equitable tolling on an “unusually generous” 12-year statute of limitations.)
In sum, measuring the Vaccine Act by the standards in Irwin, Brockamp, and Holland, we see no reason to bar equitable tolling of the statute of limitations in the Vaccine Act, and therefore must conclude that there is not “good reason to believe that Congress did not want the equitable tolling doctrine to apply.” Brockamp, 519 U.S. at 350, 117 S.Ct. 849.
C
In the order setting this case for en banc decision, we asked the parties to address whether, if equitable tolling is permitted, the circumstances of this case support equitable tolling. Dr. Cloer took advantage of our invitation and argued, as she has throughout these proceedings, that equitable tolling is appropriate in this case on the ground that she first became aware of the causal link between her MS and the Hep-B vaccine in 2004 when she saw an article in a journal suggesting such a link. She asserts that it is inequitable and unfair to hold her to the 36 month filing period when she had no reason to know, before 2004, of the causal link between her injury and the Hep-B vaccine. She thus posits that equitable tolling in her case, and presumably in other future cases with similar facts, should be a substitute for the discovery rule.
In other words, Dr. Cloer individually asks for the same relief as a matter of equity that Congress has withheld from all petitioners as a matter of law. But we find no basis in equity for doing so. Dr. Cloer has put no argument before this court that, for example, she has been the victim of a fraud, or of duress. See, e.g., Bailey v. Glover, 88 U.S. 342, 349-50, 21 Wall. 342, 22 L.Ed. 636 (1874). Instead, we understand her to argue that the result reached in the analysis above is ipso facto unfair because it threatens to deprive her of her claim. That is not, in our view, the sort of circumstance that might merit equitable tolling. See Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (noting that equitable tolling requires a litigant to have diligently pursued his rights, but that “some extraordinary circumstance stood in his way”); *1345 see also Irwin, 498 U.S. at 96, 111 S.Ct. 453 (noting that equitable tolling is to be used “sparingly” in federal cases and has been limited to cases involving deception or the timely filing of a procedurally defective pleading).
While we recognize that our holding sharply limits Dr. Cloer’s ability to be compensated under the Vaccine Act, this outcome is the result of a policy calculation made by Congress not to afford a discovery rule to all Vaccine Act petitioners and Dr. Cloer’s failure to point to circumstances that could justify the application of equitable tolling to forgive her untimely claim. We thus hold that equitable tolling under the Vaccine Act due to unawareness of a causal link between an injury and administration of a vaccine is unavailable.[11]
Accordingly, the judgment below is
AFFIRMED

. The Supreme Court has held that the Vaccine Act preempts state law vaccine design defect claims. See Bruesewitz v. Wyeth LLC, — U.S. -, 131 S.Ct. 1068, 1075, 179 L.Ed.2d 1 (2011).

. MS is "a disease in which there are foci of demyelination of various sizes throughout the white matter of the central nervous system, sometimes extending into the gray matter. Typically, the symptoms of lesions of the white matter are weakness, incoordination, paresthesias, speech disturbances, and visual complaints. The course of the disease is usually prolonged, so that the term multiple also refers to remissions and relapses that occur over a period of many years.” Borrero v. Sec’y of the Dep’t of Health & Human Servs., No. 01-417V, 2008 WL 4527837, at *1 n. 4 (Fed.Cl.Sp.Mstr. Sept. 24, 2008) (quoting Dorland's Illustrated Medical Dictionary (30th ed.2003) at 1669).

. We note that a petitioner's pleading burden is, of course, lower than the preponderance burden that must be met in order to receive compensation. See 42 U.S.C. § 300aa-13(a)(1) ("Compensation shall be awarded to a petitioner if the special master or court finds ... (A) that the petitioner has demonstrated by a preponderance of the evidence the matters required in the petition.”). To meet the preponderance standard, a petitioner must show that the vaccination brought about her injury by providing: "(1) a medical *1332 theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen, 418 F.3d at 1278. A petitioner only needs to "provide a reputable medical or scientific explanation that pertains specifically to the petitioner’s case” and "the explanation need only be legally probable, not medically or scientifically certain.” Moberly ex rel. Moberly v. Sec'y of Health & Human Servs., 592 F.3d 1315, 1322 (Fed.Cir.2010) (quotation marks omitted).
Congress clearly contemplated that petitioners might not be able to meet the burden to demonstrate causation-in-fact by preponderance at the time the petition is filed. This is easily seen in the statute as a Vaccine Act petitioner, even if ultimately unsuccessful, can still receive compensation to cover reasonable attorneys’ fees and other costs incurred in the proceeding "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim.” 42 U.S.C. § 300aa-15(e)(l).

. The first time an injury is causally linked with a vaccine often occurs as a result of a successful non-Table petition. Over time, as injuries occur throughout the population and are linked to a vaccine, the medical community begins to recognize a link between the vaccine and the injury. This can occur through studies published in medical journals or as a result of government research. Often, however, before the link is sufficiently established to become generally recognized by the medical community, petitioners are able to muster enough evidence to receive compensation from the Vaccine Program. See, e.g., Andreu ex rel. Andreu v. Sec’y of Health & Human Servs., 569 F.3d 1367, 1379 (Fed.Cir.2009) ("[Rjequiring 'objective confirmation’ in the medical literature prevents 'the use of circumstantial evidence ... and negates the system created by Congress’ through the Vaccine Act.”) (quoting Althen, supra note 4, 418 *1333 F.3d at 1279-80) (omission in original); Capizzano v. Sec’y of Health & Human Servs., 440 F.3d 1317, 1325 (Fed.Cir.2006) ("[Requiring either epidemiologic studies, rechallenge, the presence of pathological markers or genetic disposition, or general acceptance in the scientific or medical communities to establish a logical sequence of cause and effect is contrary to [precedent].”) (emphasis added). Finally, because a successful "causation in fact” petition can be the first established link between a vaccine and a non-Table injury, it must be allowed to be filed before an objective recognition is understood by the medical community at large.
As noted above, Althen sets forth the three pleading requirements for a non-Table injury petition. These requirements have not been insurmountable for petitioners seeking compensation for MS caused by the Hep-B vaccine. At least 35 petitions alleging MS caused by the Hep-B vaccine have resulted in public opinions to date, and at least 14 of those petitioners have been successful. Many of the successful petitioners filed their petitions in 1999. See, e.g., Fisher v. Sec’y of the Dep't of Health & Human Servs., No. 99-432V, 2009 WL 2365459 (Fed.Cl.Sp.Mstr. Jul. 13, 2009) (petition filed Jul. 2, 1999); Adler v. Sec'y of the Dep’t of Health & Human Servs., No. 99-608V, 2008 WL 5068931 (Fed.Cl.Sp.Mstr. Nov. 18, 2008) (petition filed Aug. 4, 1999); Doe/23 v. Sec’y of the Dep’t of Health & Human Servs., 2008 WL 4865974 (Fed.Cl.Sp. Mstr. Oct. 16, 2008) (petition filed May 17, 1999); Barillaro v. Sec’y of the Dep’t of Health & Human Servs., No. 99-408V, 2008 WL 2465794 (Fed.Cl.Sp.Mstr. May 28, 2008) (petition filed June 28, 1999); Doe/13 v. Sec'y of the Dep’t of Health & Human Servs., 2008 WL 926930 (Fed.Cl.Sp.Mstr. Mar. 31, 2008) (petition filed May 14, 1999); Doe/07 v. Sec'y of the Dep’t of Health & Human Servs., 2007 WL 3306493 (Fed.Cl.Sp.Mstr. Nov. 2, 2007) (petition filed Jul. 16, 1999); Augustynski v. Sec’y of the Dep't of Health & Human Servs., No. 99-611V, 2007 WL 3033614 (Fed.Cl.Sp.Mstr. Sep. 28, 2007) (petition filed Aug. 4, 1999); Phippen v. Sec’y of the Dep't of Health & Human Servs., No. 99-435V, 2006 WL 5631725 (Fed.Cl.Sp.Mstr. Dec. 5, 2006) (petition filed Jul. 2, 1999); Werderitsh v. Sec’y of the Dep't of Health & Human Servs., No. 99-310V, 2006 WL 1672884 (Fed.Cl.Sp.Mstr. May 26, 2006) (petition filed May 18, 1999).

. The foregoing discussion responds to arguments made by Dr. Cloer in her initial briefs and at oral argument before the panel concerning the meaning of "vaccine-related injury.” In the en banc proceedings, she preserved the consensus argument from her initial briefs, but retreated somewhat from her initial stance, arguing that the statute of limitations runs and her cause of action arises instead upon "recognition” by the medical community of a causal link between an injury and a vaccine. Her "recognition” trigger requires less proof than consensus in the medical community. Her rephrasing *1334 thus keys accrual of her claim not to medical agreement as to cause, but to whether there is reason to know that a vaccine may have caused her injury. As rephrased, her argument depends upon a discovery rule being found in the Vaccine Act statute of limitations. We address that question in part VI.A below.

. As a matter of caution, we must recognize and respect that a "statute of limitations is a condition on the waiver of sovereign immunity by the United States” and courts should be "careful not to interpret [a waiver] in a manner that would extend the waiver beyond what Congress intended.” Stone Container Corp. v. United States, 229 F.3d 1345, 1352 (Fed.Cir.2000) (quoting Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (internal quotation omitted)). We have consistently followed this admonition when interpreting the Vaccine Act's statute of limitations. See, e.g., Markovich, 477 F.3d at 1360; Brice, 240 F.3d at 1370.

. We note that Congress knows how to legislate an explicit discovery rule. For example, when providing a cause of action to quiet title of property in which the United States claims an interest, Congress mandated that "[a]ny civil action under this section ... shall be barred unless it is commenced within twelve years of the date upon which it accrued. Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States.” 28 U.S.C. § 2409(g); see also TRW, 534 U.S. at 38, 122 S.Ct. 441 (Scalia, J., concurring) (discussing three additional examples of explicit discovery rules enacted by Congress).

. The legislative history which we emphasize is not a matter of difference of opinion among legislators about what statutory language means, or individual statements by legislators. See generally Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984) (cautioning against reliance on legislators' "passing comments” and "casual statements” as indicating Congressional intent). Instead, it is a matter of pure fact that Congress had two clear and significantly differing concepts to choose from in writing the statute of limitations for the Vaccine Act. Compare H.R. 1780, 99th Congress § 2112 (1985) with S. 827, 99th Congress § 2106(a) (1985). Less significant but not unimportant is the additional fact that Congress was warned by Dissatisfied Parents Together, an interest group favoring the approach of S. 827, that the approach ultimately selected by Congress would trigger the statute of limitations regardless of when the claimant discovered the causal link between the injury and the vaccine. See To amend the Public Health Service Act to provide for the compensation of children and others who have sustained vaccine-related injuries, and for other purposes: Hearing on S. 827 before the S. Comm, on Labor and Human Res., 99th Cong. 41 (1985) (statement of Jeffrey H. Schwartz, President of DPT).

. In Martin ex rel. Martin v. Secretary of Health & Human Services, 62 F.3d 1403 (Fed.Cir.1995), the parents of a child injured by polio vaccine sought attorneys’ fees and costs under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(6) bars a petition for compensation if the petitioner has previously filed a civil suit for damages for the same injury. Because the Martins had filed such a suit, their petition was dismissed for lack of subject matter jurisdiction. We thus viewed the barrier to suit in § 3OOaa- 11(a)(6) as jurisdictional, and consequently held that the absence of jurisdiction over the Martins’ petition for compensation removed jurisdiction over their application for attorneys’ fees and costs. 62 F.3d at 1407. After we held in Brice that equitable tolling does not lie under the Vaccine Act, the Brices sought attorneys’ fees and costs. The Court of Federal Claims, in the light of Martin, treated the Brices' failure to meet the statute of limitations as jurisdictional, and thus dismissed the Brices' attorneys' fee and costs request for lack of jurisdiction. On appeal, we too assumed, without analysis, that compliance with the Vaccine Act's statute of limitations is a jurisdictional requirement, and affirmed the Court of Federal Claims decision. Brice v. Sec’y of Health & Human Servs., 358 F.3d 865, 869-70 (Fed.Cir.2004) ("second Brice ”).
Dr. Cloer brought Martin and the second Brice decision to our attention, pointing out that the second Brice decision merely assumed that the statute of limitations is jurisdictional, and asking that we clarify the issue. Notably, the government does not rely on the second Brice decision; indeed, it does not assert that the statute is "jurisdictional” and thus inhospitable to equitable tolling.
The only purpose of the statute of limitations in the Vaccine Act is to protect the government from stale or unduly delayed claims. Whether viewed from the overall purpose perspective or, as demonstrated below, from the perspective of whether Congress barred equitable tolling by erecting a jurisdictional barrier, the answer is the same. There is no barrier to equitable tolling under 42 U.S.C. § 300aa-l6(a)(2), and the statute of limitations is not jurisdictional. Previous law to the contraiy is overruled.

. The relief afforded to petitioners by 42 U.S.C. § 300aa-1 1(a)(2)(B) was not available to the petitioner in Martin. See supra n. 9. That case dealt with 42 U.S.C. § 300aa-11(a)(6), which completely barred access to the Vaccine Program if a petition was filed after November 15, 1988, for a vaccine-related injury or death associated with administration of a vaccine before November 15, 1988. In Martin, the vaccine was administered in 1986 and the state court suit was brought on November 15, 1989. Martin, 62 F.3d at 1404.

. In Irwin, the Supreme Court found for the first time that equitable tolling is presumptively available in all actions against the government, including the one asserted by Mr. Irwin. 498 U.S. at 95-96, 111 S.Ct. 453. Because the Court concluded that Mr. Irwin could not satisfy the stringent requirements of that doctrine, however, the Court affirmed the judgment the judgment against Mr. Irwin. Id. We follow a similar course here.