# United States Court of Appeals
# for the Federal Circuit

---

**MELISSA CLOER, M.D.,**
*Petitioner-Appellant,*

**v.**

**SECRETARY OF HEALTH AND HUMAN
SERVICES,**
*Respondent-Appellee.*

---

2009-5052

---

Appeal from the United States Court of Federal
Claims in 05-VV-1002, Judge Lawrence J. Block.

---

ON APPLICATION FOR ATTORNEYS' FEES AND
COSTS

---

ROBERT T. MOXLEY, Robert T. Moxley, P.C., of Cheyenne, Wyoming, filed an application for attorneys' fees and costs for petitioner-appellant. MARI C. BUSH, Kaye and Bush, LLC, of Denver, Colorado, filed a supplement to the application. Of counsel was Robert T. Fishman, of Denver, Colorado.

ANISHA S. DASGUPTA, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, filed an opposition for respondent-appellee.

With her on the opposition were TONY WEST, Assistant Attorney General, and THOMAS M. BONDY, Attorney.

———————————

Before RADER, *Chief Judge*, NEWMAN, LOURIE, CLEVENGER, BRYSON, GAJARSA,[1] LINN, DYK, PROST, MOORE, O'MALLEY, REYNA, and WALLACH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* REYNA, in which *Circuit Judges* NEWMAN, LINN, DYK, MOORE, O'MALLEY, and WALLACH join.

Dissenting opinion filed by *Circuit Judge* BRYSON, in which *Chief Judge* RADER and *Circuit Judges* LOURIE, CLEVENGER, GAJARSA, and PROST join.

REYNA, *Circuit Judge*.

## **O R D E R**

Dr. Melissa Cloer sought compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act"), alleging that her Hepatitis B vaccination caused her multiple sclerosis ("MS"). The Chief Special Master dismissed her petition as untimely, and the United States Court of Federal Claims affirmed. Dr. Cloer appealed, and although she did not ultimately prevail on the merits of her Vaccine Act claim, her appeal prompted a change of law in a limited way that potentially opens the door to certain Vaccine Act petitioners who otherwise would have been precluded from seeking redress.

The court must now decide whether Dr. Cloer is eligible to receive an award of reasonable attorneys' fees and costs in connection with her appeal. The Vaccine Act

———————————

    [1] Judge Gajarsa assumed senior status on July 31, 2011.

provides for the recovery of attorneys' fees "on a petition filed under section 300aa-11" when "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1). We believe that a petitioner who asserts an unsuccessful but non-frivolous limitations argument should be eligible for a determination of whether reasonable attorneys' fees and costs incurred in proceedings related to the petition should be awarded. Therefore, we hold that the court has discretion to remand for a determination of whether Dr. Cloer should be awarded reasonable attorneys' fees and costs.

## I. BACKGROUND

Dr. Cloer was vaccinated for Hepatitis B in 1996 and 1997. Soon thereafter, she developed symptoms of MS. At that time, the medical literature was silent as to any connection between the Hepatitis B vaccination and MS. Several years later, Dr. Cloer learned of such a potential connection for the first time. By then her MS had significantly progressed.

Dr. Cloer filed a petition for compensation under the Vaccine Act. The Chief Special Master dismissed her petition as untimely because it was filed more than 36 months after her first symptom of MS had occurred, and the Court of Federal Claims affirmed. *Cloer v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 141 (2008). Dr. Cloer appealed, and a panel of this court reversed and remanded, ruling that her petition was not time-barred. *Cloer v. Sec'y of Health & Human Servs.*, 603 F.3d 1341 (Fed. Cir. 2010), *vacated*, 399 F. App'x 577 (Fed. Cir. 2010).

Due to the importance of the issues raised by Dr. Cloer, we granted the government's petition for rehearing en banc to determine the applicability of the statute of limitations to Dr. Cloer's case. *Cloer v. Sec'y of Health &*

*Human Servs.*, 654 F.3d 1322 (Fed. Cir. 2011) (en banc). In *Cloer*, we held that the Vaccine Act's statute of limitations is not jurisdictional and that some claims brought under the Vaccine Act are subject to equitable tolling. *Id.* at 1344. The court rejected a discovery rule but concluded that Dr. Cloer's claim does not meet those equitable tolling criteria and dismissed her petition as untimely. *Id.* at 1340, 1344-45. Prior to *Cloer*, courts treated § 300aa-16(a)(2) as jurisdictional, and applications for attorneys' fees related to time-barred petitions were dismissed for lack of jurisdiction. In other words, if a petition was untimely, there was no jurisdiction. *Cloer* rejected that jurisdictional theory.

Dr. Cloer requested an award of reasonable attorneys' fees and costs incurred in her appeal. The government opposed her request on the ground that the Vaccine Act does not permit such an award in connection with a time-barred claim.

## II. DISCUSSION

The Vaccine Act establishes the criteria to be considered in determining whether a petitioner is eligible for attorneys' fees. Section 300aa-15(e) provides:

> (1) In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover—
>
> (A) reasonable attorneys' fees, and
>
> (B) other costs,
>
> *incurred in any proceeding* on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special

> master or court may award an amount of
> compensation to cover petitioner's reason-
> able attorneys' fees and other costs *in-
> curred in any proceeding* on such petition
> if the special master or court determines
> that the petition was brought in good faith
> and there was a reasonable basis for the
> claim for which the petition was brought.

(emphasis added). In sum, attorneys' fees are available where the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought.

This court has not conducted a good faith and reasonable basis analysis of Dr. Cloer's claim; nor did it require the Special Master or Court of Federal Claims to conduct such an analysis. Dr. Cloer asserted a reasonable limitations argument, and absent a determination that her Vaccine Act petition was not brought in good faith or that the claim for which the petition was brought lacked a reasonable basis, she should be eligible to receive an award of reasonable attorneys' fees and costs incurred in proceedings related to her petition.

The statutory language of the Vaccine Act supports our holding. Section 300aa-15(e)(1) provides for the award of reasonable attorneys' fees and costs arising from "a petition filed under section 300aa-11." As § 300aa-11(a)(1) indicates, *"[a] proceeding for compensation* under the [Vaccine] Program for [a] vaccine-related injury or death *shall be initiated by* service upon the Secretary and *the filing of a petition . . . ."* § 300aa-11(a)(1) (emphasis added). The Court of Federal Claims and its special masters have "jurisdiction *over proceedings* to determine if a petitioner under section 300aa-11 of this title is entitled to compensation under the [Vaccine] Program . . . ." § 300aa-12(a) (emphasis added). In other words,

when a petition is filed, it commences a proceeding over which the Court of Federal Claims has jurisdiction. Unless we conclude that Dr. Cloer's filing was a "petition filed," neither we nor the Court of Federal Claims had jurisdiction over her appeal.[2]

The plain language of the statute indicates that Congress chose not to tie the right to attorneys' fees to compliance with § 300aa-16. Section 300aa-15(e) does not reference § 300aa-16; rather, it refers to "a petition filed under section 300aa-11." Nor does the plain language of § 300aa-11(a)(1) require that a petition be timely filed in accordance with § 300aa-16. By contrast, § 300aa-11(a)(2)(A), which refers to civil actions brought in state or federal court, does require the filing of a petition "in accordance with section 300aa-16."[3] The absence of an analogous reference to § 300aa-16 in the attorneys' fees provision suggests that Congress did not intend to require compliance with § 300aa-16 as a prerequisite for the recovery of attorneys' fees.

Other statutory provisions support this interpretation. Section 300aa-12(b)(1) states that "[i]n all proceedings brought by the filing of a petition under section 300aa-11(b)," the Secretary shall be named as a respon-

---

[2]    This interpretation is also consistent with Vaccine Rule 2, which states that "[a] proceeding for compensation under the Vaccine Act is commenced by filing a petition" but does not explicitly require that the petition be filed in compliance with § 300aa-16.

[3]    Section 300aa-11(a)(2)(A) provides: "No person may bring a civil action for damages . . . in a State or Federal court for damages arising from a vaccine-related injury or death . . . unless a petition has been filed, in accordance with section 300aa-16 of this title . . . ."

dent and shall participate and be represented in the proceedings. Section 300aa-12(b)(2) requires that within 30 days after receiving service of "any petition filed under section 300aa-11," the Secretary shall publish notice of the petition in the Federal Register. Section 300aa-12(c)(6)(E) obligates the Chief Special Master to report to Congress the number of "petitions filed under section 300aa-11" annually. Section 300aa-13(c) defines "record" as the record established on "a petition filed under section 300aa-11." In referring to "petition[s] filed under section 300aa-11," these provisions refer to all petitions, not just those later determined to have been timely filed. Any requirement that naming the Secretary as a party, publishing notice in the Federal Register, reporting to Congress, and creating the record be held at abeyance until a determination is made as to the timeliness of the petition is unreasonable and would have impractical implications.

Section 300aa-15(e) applies to costs "incurred in any proceeding on such petition," and not solely those fully adjudicated on the merits. Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act. *See Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). As we explained in *Avera*:

> [O]ne of the underlying purposes of the Vaccine Act was to ensure that vaccine injury claimants have readily available a competent bar to prosecute their claims. *Denying interim fee awards would clearly make it more difficult for claimants to secure competent counsel because delaying payments decreases the effective value of awards.* . . . Interim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained.

*Id*. (emphasis added) (citation omitted); *see also* H.R. Rep. No. 99-908, at 22 (1986) ("the Committee does not intend . . . to limit petitioners' ability to obtain qualified assistance and intends . . . that the court exercise its discretion to award fees [resulting from] non-prevailing, good faith claims.").

The overarching purpose of the Vaccine Act and the National Childhood Vaccine Injury Compensation Program it created is to award compensation "to vaccine-injured persons quickly, easily, and with certainty and generosity." H.R. Rep. No. 99-908, at 3. Remedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose. *See Atchison, Topeka, & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561-62 (1987). Our interpretation of the statute fulfills congressional intent and the Act's legislative purpose. Congress acknowledged that "[l]awsuits and settlement negotiations can take months and even years to complete. Transaction costs – including attorneys' fees and court payments – are high. And in the end, no recovery may be available. Yet futures have been destroyed and mounting expenses must be met." H.R. Rep. No. 99-908, at 6. Congress recognized that having to shoulder attorneys' fees could deter victims of vaccine-related injuries from seeking redress.

Congress did not intend for only prevailing petitioners to receive an award of reasonable attorneys' fees and costs. To the contrary, compensation on a petition should include "an amount to provide for reasonable attorneys' fees and other costs incurred *in proceedings on the petition*. But even where the court does not award compensation on a petition, it may, in its discretion, make such an award for attorneys' fees and costs if it determines that *the action* was brought in good faith and that there was a

reasonable basis for the claim for which the action was brought." *Id.* at 21 (emphasis added).

The statutory language requiring a reasonable basis for the claim for which the petition was brought is broad enough to encompass the statute of limitations issue as well as the underlying merits of the claim. It is beyond dispute that Congress intended attorneys' fees to be awarded only in cases brought in good faith and where there was a reasonable basis for the claim underlying the petition, even where the petitioner does not prevail. The good faith and reasonable basis requirements apply to the claim for which the petition was brought; this applies to the entire claim, including timeliness issues. Attorneys' fees should be denied if on remand, it is determined that the petition was not brought in good faith or there was no reasonable basis for the claim for which the petition was brought.

Finally, Dr. Cloer deserves a determination as to whether she is eligible to receive attorneys' fees because her appeal inspired a shift in vaccine jurisprudence. Indeed, the government does not dispute the reasonableness of Dr. Cloer's underlying claim or allege that it was not brought in good faith, which is generally presumed. The confines of the Vaccine Act make clear that a petitioner need not prevail to receive attorneys' fees.

The dissent contends that Dr. Cloer is not entitled to attorneys' fees as a matter of law and creates a rigid rule applicable to requests for attorneys' fees in vaccine cases where the petitioner's claim is rejected solely on limitations grounds. *Cloer* overruled our precedent treating the statute of limitations as jurisdictional and did not endorse the underlying statutory interpretation of such cases. Rather, it eliminated the entire bases for such opinions. Despite this, the dissent would treat Dr. Cloer's petition under a pre-*Cloer* analysis by retroactively eliminating

jurisdiction to award attorneys' fees in connection with an unsuccessful statute of limitations argument.

The dissent, primarily in footnote one, argues that § 12 vests the Court of Federal Claims and special masters with jurisdiction to determine whether a petitioner is eligible to file a petition, even if the petition is later deemed untimely. *See* Dis. Op. at 2 n.1. This construction of "petition filed" for purposes of § 300aa-15(e) is inconsistent with the language of the Vaccine Act. Because § 300aa-16(a) states that "no petition may be filed" if it is untimely, the dissent creates a distinction between a "filing a petition" for purposes of § 300aa-11 and a "petition filed" for purposes of § 300aa-15(e) and other statutory provisions. Under this reasoning, an untimely filed petition is a "petition" sufficient to commence proceedings but is not a "petition filed" for purposes of § 300aa-16 and § 300aa-12. Such a distinction between "petitions" and "petitions filed" leads to absurd results, namely that neither this court nor the Court of Federal Claims had jurisdiction over Dr. Cloer's petition.

The dissent also contends that Dr. Cloer is not entitled to attorneys' fees because the Vaccine Act requires an evaluation of the reasonableness of the claim for which the petition was brought, which indicates that Congress did not contemplate awarding attorneys' fees in a case that never reached a merits determination. *See* Dis. Op. at 4. However, as explained above, § 300aa-15(e) explicitly refers to fees "incurred in any proceeding on such petition," including non-frivolous petitions ultimately unsuccessful on limitations grounds. Holding that attorneys' fees are only available where a petition has been subjected to a final adjudication on the merits is also inconsistent with the recognized practice of awarding interim attorneys' fees, which by definition does not require a final adjudication on the merits.

The dissent claims that "the legislative history of the Vaccine Act is silent as to the reason for the Act's highly unusual attorney fee provision" and goes on to speculate on Congress's motivation for departing from the typical American Rule of fee awards. *See* Dis. Op. at 5 ("It may well be that Congress concluded . . ."); *id*. ("Congress could well have concluded . . ."). Such speculation is unnecessary, however, in light of the remedial nature of the Vaccine Act and Congress's intent to facilitate awards to injured parties.

The dissent advocates adoption of a strict rule that strips discretion from the court and in so doing disregards the Vaccine Act's spirit and purpose. The dissent's interpretation would discourage potential Vaccine Act petitioners from pursuing claims and ignores that potential petitioners will likely be reluctant to bring claims under the Vaccine Act for fear of significant financial risk even when strong arguments exist to challenge the applicability of the statute of limitations.

III.  CONCLUSION

This Order recognizes that issues relating to the award of attorneys' fees in connection with challenges brought on limitations grounds will frequently arise in vaccine injury cases. Under *Cloer*, the Vaccine Act does not incorporate a discovery rule, and the statute of limitations begins to run on "the calendar date of the occurrence of the first medically recognized symptom or manifestation of onset of the [claimed] injury," subject to the doctrine of equitable tolling. *Cloer*, 654 F.3d at 1325, 1340, 1344-45. If a discovery rule were adopted, as Dr. Cloer now urges in the Supreme Court, the limitations inquiry in vaccine injury cases would then become when the claimant first discovered or should have discovered the potential cause of the disease or injury, rather than when

the claimant first experienced symptoms.[4]   Under either view, a petitioner may become embroiled in litigation regarding the statute of limitations, and today's order will enable reasonable claims for attorneys' fees arising from that litigation.

A petitioner who asserts an unsuccessful but non-frivolous limitations claim should be eligible for a determination of whether reasonable attorneys' fees and costs incurred in proceedings related to his or her petition should be awarded. Therefore, we remand for a determination as to whether Dr. Cloer's petition was brought in good faith and whether the claim for which her petition was brought had a reasonable basis.

Accordingly,

IT IS ORDERED THAT:

Dr. Cloer's application for reasonable attorneys' fees and costs be remanded to the Court of Federal Claims. The Court of Federal Claims is directed to make a determination consistent with this Order.

FOR THE COURT

April 11, 2012                           /s/ Jan Horbaly
Date                                     Jan Horbaly
                                         Clerk

---

[4]   Dr. Cloer filed a petition for certiorari in the United States Supreme Court on December 29, 2011.

# United States Court of Appeals for the Federal Circuit

---

**MELISSA CLOER, M.D.,**
*Petitioner-Appellant,*

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee.*

---

2009-5052

---

Appeal from the United States Court of Federal Claims in 05-VV-1002, Judge Lawrence J. Block.

---

BRYSON, *Circuit Judge*, with whom RADER, *Chief Judge*, and LOURIE, CLEVENGER, GAJARSA, and PROST, *Circuit Judges*, join, dissenting.

The question whether a party who has filed an untimely Vaccine Act petition is entitled to an award of attorneys' fees under section 15(e)(1) of the Act, 42 U.S.C. § 300aa-15(e)(1), presents a difficult statutory construction issue. While there is no clear path to the answer in the plain language or legislative history of the Vaccine Act, I believe that close attention to the text that Congress chose and consideration of the role of the fee-shifting provision both in the Vaccine Act and in the

broader context of federal fee-shifting statutes require that we deny the fee request in this case.

1. In *Brice v. Secretary of Health & Human Services*, 358 F.3d 865, 869 (Fed. Cir. 2004), this court held that the attorneys' fees provision of the Vaccine Act makes fees available only "in connection with a petition filed under section 300aa-11," and that a petition dismissed on grounds of untimeliness is not "a petition filed under section 300aa-11," as required by section 15(e). Similarly, in *Martin v. Secretary of Health & Human Services*, 62 F.3d 1403, 1406 (Fed. Cir. 1995), the court explained that in order for an attorneys' fee award to be permitted under section 15(e)(1), "there must first be a judgment 'on such a petition'—that is, 'on a petition filed under section 300aa-11.'" While this court's en banc decision in *Cloer v. Secretary of Health & Human Services*, 654 F.3d 1322 (Fed. Cir. 2011), overruled *Brice* and *Martin* insofar as they were based on lack of subject matter jurisdiction, *see* 654 F.3d at 1341 & n.9, the en banc court did not disavow the analysis of the statutory structure in those cases, and that analysis is still sound. In substance, as modified by the en banc decision in *Cloer*, *Brice* and *Martin* stand for the following principles: (1) section 16(a) of the Vaccine Act directs that "no petition may be filed for compensation under the Program"—and thus under section 11—after the expiration of the applicable time period, 42 U.S.C. § 300aa-16(a); (2) section 15(e)(1) allows an attorneys' fee award only when a petition is filed under section 11, *id.* § 300aa-15(e)(1); and therefore (3) an attorneys' fee award may be made only if the claimant files a timely petition, either by satisfying the applicable limitations period of section 16 or successfully invoking equitable tolling.[1]

---

[1] This interpretation of the statute does not, as the majority opinion suggests, create a jurisdictional impasse.

Besides the reference to a petition filed under section 11, section 15(e)(1) provides for an award of attorneys' fees to an unsuccessful petitioner "if the judgment . . . on such a petition does not award compensation." Although that language, standing alone, could be understood to refer either to a judgment on the merits or to a dismissal for untimeliness, the statutory context indicates that it does not refer to a judgment dismissing the petition for untimeliness. The same language is used in section 21 of the statute, where it clearly refers only to a judgment on the merits. That section provides that if "the judgment did not award compensation," the petitioner is required to file "an election in writing to accept the judgment or to file a civil action for damages for such injury or death." 42 U.S.C. § 300aa-21(a)(2). Because the timely filing of a Vaccine Act petition is a prerequisite to filing a civil tort suit, *see id.* § 300aa-11(a)(2)(A), a claimant who has filed an untimely petition is not eligible to file a civil action for damages. The requirement in section 21 that a petitioner elect whether to file a civil tort suit when "the judgment did not award compensation" therefore does not refer to a claimant whose petition has been denied as untimely. In light of the meaning given to that phrase in section 21, it is fair to infer that the parallel reference in section 15(e)(1) to a "judgment [that] does not award compensa-

---

Section 12 of the Act gives the Court of Federal Claims and the special masters jurisdiction "over proceedings to determine if a petitioner under section 300aa-11 of this title is entitled to compensation." 42 U.S.C. § 300aa-12(a). That reference gives the Court of Federal Claims and the special masters jurisdiction to determine whether or not the petitioner is eligible under section 16 to file a petition for compensation, even if the petitioner is ultimately determined not to be eligible to file a petition. *See Martin*, 62 F.3d at 1406.

tion" likewise denotes a judgment on the merits, not a dismissal.[2]

Finally, section 16(c) of the Act reinforces the view that the phrase "a petition filed under section 300aa-11" in section 15(e) refers to a timely petition. Section 16(c) provides that if a petition is filed under section 11, state statutes of limitations shall be stayed for any civil action brought for the vaccine-related injury, beginning on the date the petition is filed and ending on the date that an election is made under section 21 to file the civil action. 42 U.S.C. § 300aa-16(c). Because, as noted, such a civil action cannot be filed if the petition was untimely, the reference to "a petition filed under section 300aa-11" in section 16(c) can only mean a petition filed, as section 11 requires, in accordance with section 16, i.e., within the statutory time limits. The same language—"a petition filed under section 300aa-11"—is used as a prerequisite for the payment of attorneys' fees and costs in section 15(e), which is a further textual indication that attorneys' fees and costs are not intended to be paid in cases in which the petition was untimely.

---

[2] The majority finds support for its decision in *Avera v. Secretary of Health & Human Services*, 515 F.3d 1343 (Fed. Cir. 2008), which held that the Vaccine Act permits an award of interim fees to petitioners who are seeking compensation. *Avera*, however, concerned an interim award for a petitioner who had filed a timely petition and therefore was in position to obtain a judgment on the merits, either awarding or denying compensation. Nothing in *Avera* suggests that a fee award, whether interim or otherwise, is appropriate for a claimant who has not filed a timely petition. And nothing in this opinion would prohibit granting interim fees to a petitioner who has filed a timely petition and is seeking a compensation award.

2. Although the legislative history of the Vaccine Act is silent as to the reason for the Act's highly unusual attorney fee provision, the requirement that there be a timely filed petition and a judgment on the merits of the compensation request, as opposed to a dismissal of the petition for untimeliness, makes sense in light of the development and purposes of the Act.

The Vaccine Act evolved from a series of bills that were introduced over a three-year period. All of the bills that featured compensation proceedings contained attorney fee provisions, and all of them, until the very end of the legislative process, required the claimant to be a prevailing party in order to be eligible for a fee award. *See* S. 2117 (Nov. 17, 1983); H.R. 5810 (June 7, 1984); H.R. 1780 (Mar. 27, 1985); S. 827 (Apr. 2, 1985). Several of the early proposals would have allowed claimants to elect to proceed either through the compensation program or by way of a civil tort remedy. The bill that was ultimately enacted, however, required that claimants exhaust their remedies through the Vaccine Act compensation program before filing a tort action. H.R. 5546 (Sept. 18, 1986) (incorporated into S. 1744, which became P.L. 99-660, Title III of which is the Vaccine Act). The proposed exhaustion requirement was controversial and sparked strong opposition from those who did not wish to see any impediments placed in the way of plaintiffs' ability to pursue traditional civil tort remedies. *See Vaccine Injury Compensation: Hearing on H.R. 1780, H.R. 4777, and H.R. 5184 Before the H. Subcomm. on Health and the Env't of the H. Comm. on Energy and Commerce* 187, 191, 216 (1986) (statements of Jeffrey H. Schwartz, President, Dissatisfied Parents Together).

It may well be that Congress concluded that because it was imposing an additional burden on claimants, it

should make fee awards available to claimants who were required to go through the compensation program even though they were not eager to participate in the program and did not ultimately receive compensation. But since claimants who file untimely petitions do not enter the Vaccine Act compensation program and thus do not face the burden of litigating their entitlement to compensation on the merits, Congress could well have concluded that it did not make sense to provide attorneys' fees to those parties in connection with their unsuccessful efforts to avoid the limitations period and gain access to the program.

3. In attempting to discern Congress's purpose in drafting the attorney fee provision at issue in this case, it is important to keep in mind some general principles governing fee-shifting statutes. The background rule applied by American courts is the "American rule," under which each party pays its own fees. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 245 (1975). Some statutes permit or direct a departure from that rule, allowing prevailing parties to obtain an award of attorneys' fees from the losing party under certain circumstances. But it is almost unknown in American practice for a statute to provide that the prevailing party will pay the losing party's attorneys' fees. The Supreme Court put that point succinctly in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 683-84 (1983), where it noted (emphasis in original):

> Our basic point of reference is the "American Rule," *see Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975), under which even "the *prevailing* litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the *loser*." It is clear that generations of American judges,

lawyers, and legislators, with this rule as the point of departure would regard it as "quite inappropriate" to award the "loser" an attorney's fee from the "prevailing litigant."

The Supreme Court in *Ruckelshaus* was able to identify only one federal statute that, as of that time, permitted fee awards to a party whose views were rejected. That statute applied not to litigation, but to the promulgation of rules regarding the regulation of hazardous chemical substances. *Ruckelshaus*, 463 U.S. at 685 n.7, citing 15 U.S.C. § 2605(c)(4)(A).

The statute at issue in this case plainly allows losing parties to obtain a fee award from the prevailing party in some circumstances. But because Congress departed from the governing principles applied in virtually every other federal fee-shifting statute, we should be cautious in interpreting the statutory mandate to extend beyond those cases in which fee-shifting was clearly intended. *See Robert C. Herd & Co. v. Krawill Mach. Corp.*, 359 U.S. 297, 304-05 (1959) (a rule of law "in derogation of the common law . . . must be strictly construed"); *In re Crescent City Estates*, 588 F.3d 822, 826 (4th Cir. 2009) ("Because fee-shifting statutes are 'in derogation of the common law,' courts are obligated to construe them strictly.").

That is particularly true in light of the practical effect of requiring the government to pay attorneys' fees to persons who both fail to file a timely petition and then fail in their effort to show that their untimeliness was excused by equitable tolling—which is the only class of persons potentially affected by the resolution of the fee issue before us. Section 15(e)(1) of the Vaccine Act provides that attorneys' fees can be paid to a petitioner to

whom the court does not award compensation "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1).  As a preliminary matter, it would seem that if Congress had contemplated that claimants making untimely filings should be eligible for attorneys' fees, it would have required both a reasonable basis for the underlying claim and a reasonable basis for the equitable tolling argument; it seems unlikely that Congress would want to compensate claimants who had a reasonable basis for the underlying claim but no reasonable basis to qualify for equitable tolling.  More fundamentally, it seems quite implausible that in a case in which the claimant's submission was held to be untimely, Congress would have wanted the special master and the court to conduct a collateral proceeding to determine whether, had the claim been eligible for consideration, it would have had a reasonable chance of success.  Yet that is the effect of the court's ruling today.

In a case that has gone to judgment on the merits and the petitioner has lost, it is fairly easy for the special master and the court to determine whether the petitioner's position on the merits was reasonable.  In that setting, the special master and the court will have the entire record of the case before them to enable them to make that determination.  It is an entirely different matter for the special master to have to conduct a sort of shadow trial to determine whether, if the claimant had made a timely filing, the petition would have had a reasonable chance of succeeding.  Quite apart from the burden on the special masters and the court, the amount of attorney time (and thus the accumulating fees) that would be consumed by such a proceeding would likely exceed the fees expended on the typically much simpler

question whether equitable tolling is available to the claimant. Again, it seems unlikely that Congress envisioned such a scheme, and in the absence of express congressional authorization, we should be cautious about engrafting one onto the statute. Caution is especially warranted in a case authorizing a monetary award against the government in light of well-settled principles of sovereign immunity. The Supreme Court has held that "[e]xcept to the extent it has waived its immunity, the Government is immune from claims for attorney's fees." *Ruckelshaus*, 463 U.S. at 685-86. And the Court has recently reaffirmed that "a waiver of sovereign immunity must be 'unequivocally expressed' in statutory text"; that "[a]ny ambiguities in the statutory language are to be construed in favor of immunity"; and that "[a]mbiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the government." *FAA v. Cooper*, No. 10-1024 (U.S. Mar. 28, 2012), slip op. 5.

For these reasons, I respectfully dissent.