# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS
### No. 08-0308V
### Filed: August 6, 2015
### Not for Publication

```
* * * * * * * * * * * * * * * * * * * * * * * * *
HUSSEIN H. HASHI and SAFIA         *
WEGED, parents of O.H.,            *
                                   *        Autism; Dismissal;
               Petitioners,        *        Significant Aggravation;
          v.                       *        Failure to Comply with Court Orders
                                   *
SECRETARY OF HEALTH AND            *
HUMAN SERVICES,                    *
                                   *
               Respondent.         *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Elaine W. Sharp, Esq., Whitfield, Sharp & Sharp, Marblehead, MA, for petitioners.
Traci R. Patton, Esq., U.S. Dept. of Justice, Washington, DC, for respondent.

## DISMISSAL DECISION[1]

**Vowell,** Chief Special Master:

On June 1, 2015, I issued findings of fact regarding petitioners' significant aggravation claim. As I had previously dismissed their causation in fact claim because it was untimely filed, *see Hashi v. Sec'y, HHS,* No. 08-308V, 2013 WL 10487184 (Fed. Cl. Spec. Mstr. Aug. 26, 2013), the significant aggravation claim was petitioners' only remaining claim. In my June 1, 2015 fact ruling, I noted that based on my factual findings, "it appears highly unlikely that any reputable expert can opine that O.H.'s condition was significantly aggravated by the vaccinations administered in April 2006" and remarked that it may "be unreasonable for petitioners to continue to pursue this

---

[1] Because this decision contains a reasoned explanation for my action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire decision will be available to the public.

case." *Hashi v. Sec'y, HHS,* No. 08-308V, 2015 WL 4626843, at *15.

Nevertheless, I allowed petitioners 60 days to identify an expert witness willing to opine that the vaccinations significantly aggravated O.H.'s condition. Petitioners' deadline was July 31, 2015. I cautioned petitioners that "[n]**o extensions to this deadline will be granted**." *Id.* (emphasis in original).[2]

Petitioners' counsel untimely filed a status report on August 1, 2015, indicating that she had not heard from her clients about how they wished to proceed in this case, if at all. She did not address what, if anything, she had done to identify an expert,[3] nor when she communicated the fact ruling to petitioners. Regardless of whether petitioners or their counsel are at fault, petitioners have failed to comply with a very explicit and simple order: identify an expert or dismiss their case. They have failed to do either. **This case is thus DISMISSED for failure to comply with court orders.**

## I. Procedural History.

Petitioners Safia Weged and Hussein Hashi ["Ms. Weged," "Mr. Hashi," or "petitioners"] filed the short-form petition authorized by Autism General Order #1[4] for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[5] [the "Vaccine Act" or "Program"], on behalf of their minor daughter, O.H. By filing the short-form petition, petitioners joined the Omnibus Autism Program ["OAP"],[6] thereby asserting that O.H. has an autism spectrum disorder ["ASD"][7] and that

---

[2] I note that petitioners' counsel has frequently asked for extensions of time to comply with court orders. Her August 1, 2015 status report includes her 17th request for additional time to submit routine filings in this matter.

[3] Petitioners' counsel had previously communicated with two experts, Drs. Sims and Kinsbourne, according to representations in status reports and other filings. *See* Status Report, filed Oct. 19, 2011, at 1 (remarking that petitioners' counsel had retained Dr. Sims to review the case and produce an expert report); Pet. Ex. 19 (statement from Dr. Kinsbourne, dated May 27, 2014, requesting an additional 30 days to review O.H.'s case).

[4] The text of Autism General Order #1 can be found at http://www.uscfc.uscourts.gov/sites/default/files/ autism/Autism+General+Order1.pdf, 2002 WL 31696785 (Fed. Cl. Spec. Mstr. July 3, 2002).

[5] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

[6] The OAP and the effects of joining it are discussed in detail in *Dwyer v. Sec'y, HHS*, No. 03-1202V, 2010 WL 892250, at *3 (Fed. Cl. Spec. Mstr. Mar. 12, 2010). In summary, the OAP created a body of evidence about ASD that could be used to resolve not only the test cases themselves, but all the remaining OAP cases as well. Although the remaining OAP petitioners were not bound by the results in the test cases and remained free to develop and present new evidence and new theories, the OAP evidence could be relied upon by either side in resolving the remaining cases.

[7] "Autism spectrum disorder" is an umbrella term encompassing several neurological disorders manifesting in early childhood with impairments in communication and social interaction, and the display of restricted, repetitive, or stereotypical patterns of behavior, interests, and activities. A more complete description of the disorder is contained in *White v. Sec'y, HHS*, No. 04-337V, 2011 WL 6176064 (Fed. Cl.

one or more vaccines listed on the Vaccine Injury Table[8] were causal of her condition. Petitioners did not file any medical records or details regarding O.H.'s injuries with the short-form petition.

On April 28, 2008, the presiding special master[9] ordered petitioners to complete their petition by filing the statutorily required medical documentation[10] and a "Statement Regarding Onset," clearly detailing O.H.'s first symptom or manifestation of onset or significant aggravation of her injury. Order, issued Apr. 28, 2008. Respondent filed her Rule 4(c) report on May 20, 2008, noting that petitioners had yet to file any medical records and, thus, she could not assess the merits of the claim. Respondent's Report at 4. By October 23, 2008, petitioners filed 23 exhibits of medical records,[11] but did not submit a "Statement Regarding Onset."

No further activity occurred in this case until after the conclusion of the appeals in the OAP test cases. On January 25, 2011, in view of the test case findings of insufficient evidence linking vaccines and autism, petitioners were ordered to inform the court if they wished to proceed with their claim or to exit the Vaccine Program. Order, issued Jan. 25, 2011. Petitioners evinced their intent to proceed and filed an amended petition on June 29, 2011, alleging that the MMR vaccine O.H. received on July 1, 2002 caused an encephalopathy and sequelae. First Amended Petition, ¶¶ 2-3. The amended petition also alleged that O.H. was later diagnosed with a mitochondrial disorder, specifically a Complex I electron transport chain ["ETC"] deficiency. *Id., ¶* 4.

During a status conference held on July 20, 2011, I advised petitioners' counsel that this claim appeared to have been filed outside the Vaccine Act's 36 month statute of limitations. Order, issued July 20, 2011, at 2; *see also* § 16(a)(2). I cautioned petitioners' counsel against obtaining an expert report at that point, in view of the unsettled state of the law regarding the Vaccine Act's statute of limitations and its effect on payment of fees and costs on unsuccessful cases.[12] Order, issued July 20, 2011;

---

Spec. Mstr. Nov. 22, 2011).

[8] 42 C.F.R. § 100.3 (2011).

[9] This case was reassigned to me on July 1, 2011.

[10] Section 11(c)(2) of the Vaccine Act and Vaccine Rule 2 require that the petition be accompanied by medical records and affidavits.

[11] Petitioners initially labeled their 23 exhibits A-W. The Guidelines for Practice indicate that petitioners' exhibits should be labeled using Arabic numbers. Accordingly, pursuant to my order of July 20, 2011, petitioners refiled most of these exhibits using numbers as Pet. Exs. 1, 1.2, 1.3, 2, 2.1, 2.2, 2.3, and 3. However, I was unable to locate Petitioners' Exhibit S in the subsequently filed documents, and it continues to be identified as Pet. Ex. S in this ruling.

[12] At the time of this status conference, interpretation of the Vaccine Act's statute of limitations was under review by the U.S. Court of Appeals for the Federal Circuit. The Federal Circuit, sitting *en banc*, heard oral argument in *Cloer v. Sec'y, HHS,* on May 10, 2011. Because the outcome of that case could affect my determination of timeliness in this case, I opted to wait for the Federal Circuit's decision before ordering petitioners to obtain an expert report. On August 5, 2011, the Federal Circuit reiterated that the first symptom recognized by the medical community at large as a symptom of a disorder triggered the running of the statute of limitations in Vaccine Act cases. *Cloer v. Sec'y, HHS*, 654 F.3d 1322 (Fed. Cir.

*see also* Order, issued Nov. 1, 2011.

Between August 3, 2011, and October 18, 2011, petitioners filed eight exhibits addressing O.H.'s more recent medical treatment. Shortly thereafter, petitioners' counsel reported that Dr. Katherine Sims, a neurogeneticist, had been retained as an expert to evaluate claims of vaccine causation and an expert report was forthcoming. Petitioners' Status Report, filed Oct. 19, 2011.

In response to petitioners' status report, I reiterated my caution about retaining an expert prior to a determination that this case was timely filed. I emphasized that, given O.H.'s age and ASD diagnosis at the time this petition was filed, a significant issue in this case was an absence of records of O.H.'s routine pediatric care from birth onward. I ordered petitioners to refocus their efforts toward developing a complete medical record. Order, issued Nov. 1, 2011. Additionally, I ordered petitioners to provide medical records identifying the physician or other specialist who diagnosed O.H. with ASD. Order, issued Dec. 2, 2011.

Between early December 2011 and April 2012, petitioners filed eight more exhibits containing O.H.'s educational and medical records from birth to early childhood. During this time, petitioners submitted a status report indicating that O.H. suffered a pre-existing injury, specifically a mitochondrial disorder, which was exacerbated by repeated vaccinations. Status Report, filed Dec. 16, 2011. However, the report did not identify which specific vaccines were believed to have aggravated O.H.'s disorder.

On May 17, 2012, respondent filed a motion to dismiss petitioners' claim, arguing that the petition was filed approximately two years and four months after the expiration of the statute of limitations.[13] Respondent's Motion to Dismiss, filed May 17, 2012, at 5 (noting that the petition should have been filed by December 31, 2005). In response, petitioners filed a joint opposition to respondent's motions to dismiss in both of their children's cases.[14] In their opposition, petitioners asserted that the DTaP, MMR, and IPV vaccines administered on April 22, 2006,[15] significantly aggravated O.H.'s pre-existing mitochondrial disorder and that the short-form petition was filed on April 22, 2008, within the statute of limitations period.[16] Petitioners' Joint Opposition to Respondent's Motions to Dismiss at 2, 5.

---

2011), *cert. denied*, 132 S. Ct. 1908 (2012).

[13] The Vaccine Act provides that "no petition may be filed . . . after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset . . . of such injury." § 16(a)(2).

[14] In addition to this case, petitioners have filed a petition on behalf of their daughter S.H. (No. 08-307V).

[15] The record petitioners cited for this date, Pet. Ex. 7, pp. 2-3, is a visit from June 9, 2007. I note that the vaccination records for the DTaP, MMR, and IPV vaccines now alleged to be causal is listed as April 24, 2006.

[16] This claim differs from petitioners' first amended petition, which identified the July 2002 MMR vaccine as causing O.H.'s encephalopathy and sequelae. First Amended Petition, ¶ 3.

The filed medical records showed that O.H. received DTaP, MMR, and IPV vaccines on April 24, 2006. However, the records did not include the consultation notes of Dr. Peter Masucci, who served as O.H.'s pediatrician during the time in question. Also missing were the particulars about the vaccinations O.H. received that day, including the lot number and manufacturer. In response to my September 2012 Order to file additional medical records, petitioners filed Dr. Masucci's consultation notes for some of O.H.'s visits occurring between November 2004 and April 2006 as Pet. Ex. 18. They do not appear to be his complete records for treatment of O.H.[17]

On August 26, 2013, I dismissed petitioners' causation in fact claim because it was untimely filed. *Hashi v. Sec'y, HHS,* No. 08-308V, 2013 WL 10487184 (Fed. Cl. Spec. Mstr. Aug. 26, 2013). Petitioners elected to proceed on a significant aggravation claim, a claim not made in their original or first amended petition, but first raised in Petitioners' Status Report, filed December 16, 2011, at 1. The significant aggravation claim was explicitly raised in the second amended petition filed on September 25, 2013.

The second amended petition asserted that vaccines O.H. received on April 22, 2006, significantly aggravated an underlying mitochondrial disorder.[18] Second Amended Petition, ¶ 6. As evidence of the significant aggravation, petitioners relied on assertions made by petitioner Hussein Hashi in his affidavit, dated and filed on July 16, 2012. *See* Pet. Ex. 15. In dismissing the causation in fact claim and permitting petitioners to proceed on the significant aggravation claim, I noted that Mr. Hashi's affidavit appeared to contradict the contemporaneous medical records regarding O.H.'s condition before and after the April 24, 2006 vaccinations.[19] *Hashi,* 2013 WL 10487184, at *7, n.18.

To resolve the discrepancies between Mr. Hashi's affidavit and the contemporaneous medical records, I conducted a hearing before ruling on the facts regarding O.H.'s condition. *See* Order, issued May 29, 2014. I heard the testimony of Mr. Hashi and Ms. Nimo Hashi, his niece,[20] on September 18, 2014, in a hearing in Boston, MA. I carefully considered their testimony and ultimately found that the contemporaneous medical records and histories provided by O.H.'s parents at times closer to the events in question more accurately reflect O.H.'s condition than the hearing testimony and affidavits of the two hearing witnesses. I issued a fact ruling on June 1, 2015, concluding that petitioners have "failed to demonstrate that O.H.'s

---

[17] This exhibit contains a vaccine administration record and a few (largely illegible) consultation notes. There are entries in November of 2004, one entry dated in February 2006, and one entry for April 2006.

[18] I note that the date of the diphtheria, tetanus, acellular, and pertussis ["DTaP"], measles, mumps, and rubella ["MMR"], and inactivated polio virus ["IPV"] vaccines listed in O.H.'s consultation notes is April 24, 2006, and not, as petitioners allege, April 22, 2006. Petitioners' Exhibit ["Pet. Ex."] 7, pp. 2-3.

[19] These were the only vaccinations she received within the statute of limitations period. *See* Pet. Ex. 7, pp. 2-3.

[20] Ms. Hashi testified that she frequently babysat for O.H. and her sister starting in October of 2002 (Pet. Ex. 20, ¶ 4) and was often a guest in the Hashi home during her undergraduate and graduate schooling. *See* Tr. at 161-63. When she began college in the fall of 2004, Ms. Hashi continued to visit and babysit on an as-needed basis. Tr. at 163.

symptoms and behavior worsened within 18 months of the April 2006 vaccinations." I provided them with one more opportunity to identify an expert willing to opine that O.H.'s vaccinations did significantly aggravate her condition. *Hashi,* 2015 WL 4626843, at *15.

My factual findings, both in dismissing petitioners' causation in fact claim and in determining that O.H.'s symptoms and behavior did not significantly worsen after she received the allegedly aggravating vaccinations, contain thorough examinations of the medical records and the testimony provided by petitioners' family members. I adopt those factual findings by reference. *Hashi,* 2013 WL 10487184; *Hashi,* 2015 WL 4626843.

In sum, O.H. was born into a family with a lengthy history of developmental delays. Within her first year of life, her pediatrician became concerned about her development. By the time she was two and a half years old, O.H. had begun to lose developmental milestones, and she was diagnosed with autism before her fourth birthday.

Nothing in the contemporaneous medical records indicates that O.H. suffered any reaction to the allegedly aggravating vaccinations she received in April of 2006, approximately a year after her autism diagnosis. In the months following the allegedly aggravating vaccines, O.H.'s health remained much the same as it had been for the previous year—she was nonverbal, prone to stereotyped behaviors, and profoundly developmentally delayed. It was not until the fall of 2007, approximately a year and a half later, that O.H.'s parents and physicians became concerned about a second regression.

Based on these facts, it would have been very difficult for petitioners to find an expert willing to opine that O.H.'s April 2006 vaccinations significantly aggravated her condition. Petitioners were given 60 days to identify such an expert; instead, petitioners' counsel filed an untimely status report indicating that she had been unable to communicate with her clients about how to proceed. Pet. Status Report, filed Aug. 1, 2015.

## II. Failure to Comply with Court Orders

Under the Vaccine Rules, I am empowered to dismiss any petition for "failure of the petitioner to…comply with…any order of the special master or the court." Vaccine Rule 21(b)(1). Petitioners were warned that no extensions of time would be granted in this matter, given the posture of this case, post-fact hearing. *Hashi,* 2015 WL 4626843, at *15. After being ordered to *identify an expert witness* by no later than July 31, 2015, petitioners' counsel untimely filed a status report requesting additional time to *contact her clients*. Petitioners' counsel did not indicate whether she had approached any potential expert witnesses about their willingness to opine based on the June 2015 fact ruling. Any further delay is inexcusable. Under these circumstances, a dismissal for failure to comply with court orders is appropriate.

The petition for compensation is therefore DENIED.  The clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

<u>**s/Denise K. Vowell**</u>
Denise K. Vowell
Chief Special Master