# United States Court of Appeals for the Federal Circuit

---

**SUSAN COTTINGHAM, ON BEHALF OF HER MINOR CHILD, K.C.,**
*Petitioner-Appellant*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee*

---

2019-1596

---

Appeal from the United States Court of Federal Claims in No. 1:15-vv-01291-MCW, Senior Judge Mary Ellen Coster Williams.

---

Decided: August 19, 2020

---

ANDREW DOWNING, Van Cott & Talamante, PLLC, Phoenix, AZ, argued for petitioner-appellant.

VORIS EDWARD JOHNSON, JR., Vaccine/Torts Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by ETHAN P. DAVIS, C. SALVATORE D'ALESSIO, CATHARINE E. REEVES.

---

Before REYNA, WALLACH, and HUGHES, *Circuit Judges.*

REYNA, *Circuit Judge.*

Petitioner-Appellant Susan Cottingham filed an application for attorneys' fees and certain litigation costs incurred in connection with Cottingham's claim for compensation under the National Vaccine Injury Compensation Program. The Special Master denied the application, and the United States Court of Federal Claims affirmed the denial. Because the Special Master abused his discretion in denying attorneys' fees and costs, we vacate and remand.

BACKGROUND

A. Vaccine Act Petition

On October 30, 2015, Susan Cottingham, on behalf of her then minor daughter, K.C., filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, ("Vaccine Act"). The petition alleged that K.C. suffered various physical injuries that were caused by a Gardasil® vaccination she received on July 5, 2012, for the prevention of human papilloma virus ("HPV").

Gardasil® is an FDA-approved vaccine indicated for prevention of numerous "diseases" including HPV. *See* J.A. 37–59 at 37 (Gardasil® package insert). Gardasil's® package insert identifies several potential adverse reactions associated with its administration, including headache, dizziness, and syncope. J.A. 40–45.

HPV Vaccines are included on the Vaccine Act's vaccine injury table as of February 1, 2007. 42 C.F.R. § 100.3(e)(7). At the time of petition in October 2015, the Vaccine Injury Table specified no conditions or onset times

for the HPV vaccine. *See* HHS Vaccine Injury Table, 42 C.F.R. § 100.3(a).[1]

The record indicates that Cottingham first contacted counsel about K.C.'s injuries on May 15, 2015. For the next five months, counsel gathered K.C.'s medical records. Counsel also secured an affidavit from K.C. on October 28, 2015. J.A. 32–34. In the affidavit, K.C. declared that she began experiencing the initial symptoms of her alleged vaccine injuries approximately four months after she received the Gardasil® vaccine. J.A. 32. Based on the date that K.C. reported first experiencing symptoms, counsel concluded that the three-year statute of limitations to file a Vaccine Act claim would potentially run on November 1, 2015, and filed Cottingham's petition on October 30, 2015, before the U.S. Court of Federal Claims ("Claims Court"). The Claims Court appointed a special master to consider the claim. *See* J.A. 69.

The petition alleged that K.C.'s July 5, 2012, vaccination caused her to experience: (1) chronic headaches that began on November 1, 2012; (2) two episodes of fainting, one on March 29, 2013, and one on May 23, 2013; and (3) menstrual difficulties starting in "the latter part of 2013." J.A. 6–7, J.A. 96–99.

By March 15, 2016, Cottingham's counsel obtained and filed relevant medical records. K.C.'s medical records

---

[1]    In 2017, three conditions for the vaccine were added to the Vaccine Injury Table: anaphylaxis with onset in less than four hours; shoulder injury with onset in less than 48 hours, and vasovagal syncope with onset in less than 1 hour. HHS Vaccine Injury Table, 42 C.F.R. § 100.3 (2017). These conditions do not apply to Cottingham's petition, however, because they apply to petitions filed on or after February 21, 2017. HHS Vaccine Injury Table, 42 C.F.R. § 100.3(e) (2017).

consist of numerous medical-examination reports detailing
K.C.'s medical history.  J.A. 35, 36, 60, 61, 62, 63–67.  For
example, on November 30, 2012, K.C. complained of head-
aches "off and [on] all week."  J.A. 35.  On January 31, 2013,
K.C. again reported a headache.  J.A. 61.  On March 29,
2013, K.C. reported dizziness, syncope, and headache.  J.A.
62.  On May 23, 2013, K.C. complained of syncope and
headache.  J.A. 63–65.  On July 25, 2013, K.C. reported ex-
periencing "several episodes of dizziness and passing out."
J.A. 36.  And in May 2015, K.C.'s medical reports document
a chief complaint of amenorrhea, that K.C. "ha[d] not had
a period in [four months]" and another report of K.C. "not
[having] a menstrual cycle in [six] months."  J.A. 60, 66–
67.  K.C.'s May 14, 2015, medical report documents K.C.'s
mother's "concern[] that the Gardasil series may have had
something to do with the recent changes noted in [K.C.'s]
menstrual cycle."  J.A. 60.

During a March 2016 status conference with the Spe-
cial Master, counsel for the Appellee Secretary of Human
Health and Services ("Secretary") "noted that reasonable
basis for bringing the case may not be present for [Cotting-
ham]."  In response, Cottingham's counsel requested addi-
tional time to seek and obtain expert opinion to support the
claim.  The Special Master granted Cottingham's request.
Between April and October 2016, Cottingham's counsel
contacted two different experts.  *See* J.A. 2.  Neither expert
provided a favorable opinion, and Cottingham was unable
to submit an expert opinion supporting her claim.  *See id.*,
J.A. 107.  On October 7, 2016, Cottingham's counsel filed a
motion to dismiss the petition, and on October 13, 2016, the
Special Master issued a decision denying entitlement to
compensation.

## B.  Attorneys' Fees and Costs

On October 26, 2016, Cottingham's counsel filed an ap-
plication for attorneys' fees and litigation costs in the
amount of $11,468.77 that were incurred in connection

with bringing the petition for Vaccine Act compensation. *See* 42 U.S.C. § 300aa-15(e)(1). The question of attorneys' fees and costs garnered three distinct decisions by the Special Master, each reviewed by the Claims Court, which twice remanded back to the Special Master. We review each of the Special Master's decisions in turn.

First, on March 30, 2017, the Special Master issued a decision denying fees and costs on grounds that the vaccine claim lacked a reasonable basis. The Special Master found that "the medical records included 'no evidence to support the petition's vaguely asserted claims that the HPV vaccination caused K.C.'s headaches, fainting, or menstrual problems' and that [Cottingham] did not present an opinion from a retained expert supporting the contention that a vaccination harmed K.C." J.A. 2–3. Cottingham filed with the Claims Court a motion for review of the Special Master's decision. The Claims Court considered the motion and vacated the Special Master's decision. *See* J.A. 3. The Claims Court held that the Special Master erred by not considering "the impending statute of limitations as a factor weighing in favor of a reasonable basis finding." *Id.* The Claims Court remanded the case to the Special Master with instruction to "apply a totality of the circumstances standard and reassess whether [Cottingham's] claim had a reasonable basis at the time the petition was filed and at intervals when additional evidence became available to [Cottingham's] counsel thereafter." *Id.*

Second, while remand was pending before the special master, this court issued its opinion in *Simmons v. Secretary of Health & Human Services*, 875 F.3d 632 (Fed. Cir. 2017). In *Simmons*, we held that although a looming statute of limitations deadline may impact the question of whether good faith existed to bring a claim, a statute of limitations deadline does not provide a reasonable basis for the claim asserted in the petition. *Id.* at 636. We noted that:

> The Vaccine Act provides that there must be a "reasonable basis *for the claim* for which the petition was brought" before the special master may exercise her discretion in awarding attorneys' fees. 42 U.S.C. § 300aa-15(e)(1) (emphasis added). Whether there is a looming statute of limitations deadline, however, has no bearing on whether there is a reasonable factual basis "for the claim" raised in the petition. That is an objective inquiry unrelated to counsel's conduct. Although an impending statute of limitations deadline may relate to whether "the petition was brought in good faith" by counsel, the deadline does not provide a reasonable basis for the merits of the petitioner's claim.

*Id.* (emphasis in original); *see also* J.A. 3.

The Special Master decided that *Simmons* did not impact his analysis and that he was bound by the Claims Court's remand instructions to apply a "totality of the circumstances" standard. *See* J.A. 3–4. Applying the "totality of the circumstances" test, the Special Master awarded attorneys' fees, reasoning that "K.C.'s affidavit, alone, justifies this result." *Cottingham on behalf of K.C. v. Sec'y of Health & Human Servs.*, No. 15-1291V, 2017 WL 6816709, at *6 (Fed. Cl. Dec. 12, 2017).

The Secretary filed a motion for review, arguing that in light of *Simmons*, the Claims Court should vacate both its original remand decision and the Special Master's decision on remand and reinstate the Special Master's original decision denying attorneys' fees and costs. The Claims Court vacated the Special Master's decision on grounds that *Simmons* did apply and that its original remand decision did not comport with *Simmons*. The Claims Court remanded the case to the Special Master to reassess whether Cottingham had a reasonable basis to bring her claim without considering the statute of limitations.

On June 20, 2018, the Special Master issued his third and final decision and found no reasonable basis for Cottingham's claim. *See* J.A. 102–110. The Special Master's finding again turned on what he deemed to be a complete absence of evidence, either in the medical records or from a retained expert, that would support a reasonable basis for a causal link between the Gardasil® vaccination and K.C.'s alleged injuries. J.A. 109–10.

Cottingham again filed a motion for review, arguing that the Special Master misinterpreted *Simmons* and that the Special Master improperly elevated the burden of proof for establishing a reasonable basis. J.A. 4. Cottingham argued that the Special Master required Cottingham to show a basis that would win on the merits of the case, as opposed to a reasonable basis to bring a claim. The Claims Court rejected Cottingham's arguments. J.A. 4–5. The Claims Court held that, under *Simmons*, the Special Master "may consider the evidence a petitioner provided, such as medical records and affidavits, in determining whether a reasonable basis for the claim exists." J.A. 5. The Claims Court further held that the Special Master did not improperly require Cottingham to satisfy a heightened standard for reasonable basis but rather correctly "focused on the lack of evidence in [K.C.'s] medical records and the treating physicians' diagnoses, along with the absence of any expert opinion or supporting medical literature." *Id.* This appeal ensued.

## DISCUSSION

The purpose of the Vaccine Act and the National Childhood Vaccine Injury Compensation Program is to award compensation to vaccine-injured persons quickly, easily, and with certainty and generosity. *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2017) (internal quotation omitted) (citing H.R. Rep. No. 99-908, at 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 6344). It is also meant to assist a petitioner's "ability to obtain qualified

assistance by making fees awards available for non-prevailing, good-faith claims." *Sebelius v. Cloer*, 569 U.S. 369, 370 (2013) (internal quotation omitted) (citing H.R. Rep. No. 99-908, pt. 1, p. 22. Pp. 1889–1895). Thus, when a petitioner is denied compensation for a claim, he or she may still request compensation to cover "reasonable attorneys' fees and other costs incurred . . . if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1). Absent bad faith or a lack of reasonable basis, a non-prevailing petitioner is eligible to receive an award of attorneys' fees. *See Cloer*, 675 F.3d at 1360–61.

The parties do not dispute whether Cottingham filed her claim in good faith. As a result, we do not address the good faith requirement. There are two disputes in this appeal. First, the parties dispute whether, post-*Simmons*, the totality of the circumstances test should apply in a reasonable basis inquiry. Second, the parties dispute whether the Special Master abused his discretion in denying attorneys' fees and costs.

## A. Totality of Circumstances under *Simmons*

Cottingham argues that the reasonable basis analysis *is* a totality of circumstances test. According to Cottingham, this court in *Simmons* only removed two factors from the totality of circumstances test: a looming statute of limitations and conduct of counsel. Otherwise, *Simmons* left the totality of circumstances test intact. Cottingham asserts that the Claims Court's description of the totality of circumstances test in *Amankwaa* prevails and that reasonable basis is a totality of circumstances test that includes consideration of "objective evidence, the novelty of the vaccine, and more." Appellant Br. at 10–11. Cottingham argues that the Special Master abused his discretion by failing to apply a totality of circumstances review and by

requiring Cottingham "to prove causation with a preponderance of evidence to satisfy reasonable basis." *Id.* at 11.

The Secretary argues that *Simmons* "implicitly rejected the 'totality of the circumstances' test in favor of an objective, evidence-based reasonable basis standard." Appellee Br. 9, 12–17. The Secretary reasons that we implicitly denounced the totality of the circumstances test because "[n]owhere in *Simmons* does the Court endorse a 'totality of the circumstances' test for evaluating reasonable basis." *Id.* at 13. The Secretary asserts that continued application of a totality of the circumstances test "breeds confusion . . . is incompatible with the objective, evidence-based standard . . . [and] inevitably invites consideration of extraneous, subjective factors, such as whether the claim is 'novel,' or whether counsel acted reasonably in dismissing . . . a meritless case." Appellee Br. at 15.

We see no reasoned basis for abandoning the Claims Court's objective, totality of the circumstances inquiry. For the reasons explained below, we do not read *Simmons* as rejecting this test.

We review de novo the Special Master's application of the law. *Simmons*, 875 F.3d at 635. When determining whether a petitioner has a "reasonable basis" for filing a claim, the Claims Court often relies on "an objective standard determined by the totality of the circumstances." *Chuisano v United States*, 116 Fed. Cl. 276, 286 (Fed. Cl. 2014). The Claims Court has identified nonexclusive factors that it considers in a totality of the circumstances review, including the factual basis of the claim for compensation and any medical evidence supporting that claim. *Id.* at 288. The Claims Court's objective, totality of the circumstances test comports with *Simmons*.

In *Simmons,* we clarified that a reasonable basis can only be established with objective evidence. To be clear, a petitioner seeking attorney fees and costs must show good faith in bringing the claim and that a reasonable basis for

the claim raised in the petition existed at the time the petition was filed. Good faith is a subjective test, satisfied through subjective evidence. Reasonable basis, on the other hand, is an objective test, satisfied through objective evidence. *Simmons*, 875 F.3d at 635 ("'[O]nly "good faith" is subjective; "reasonable basis" is objective.'") (quoting *Chuisano*, 116 Fed. Cl. at 289.

The Secretary is correct that the court in *Simmons* did not mention totality of circumstances. This silence, however, should not be taken either as an endorsement or as a rejection of a "totality of circumstances" test. What was material in *Simmons*, as in this case, is the question about the *type* of evidence that is required respectively to satisfy the good faith and reasonable basis requirements of the Vaccine Act. While the court did not portend to identify what constitutes subjective or objective evidence, it did specify two forms of evidence that are subjective, evidence of attorney conduct and a looming statute of limitations. Consideration of these two types of subjective evidence in a reasonable basis analysis would constitute an abuse of discretion. Similarly, we clarify that the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion.

### B. Objective Evidence of Reasonable Basis

Cottingham also challenges the Special Master's determination that Cottingham failed to establish a reasonable basis for her claim. In his third decision, which denied Cottingham's request for attorneys' fees and costs (J.A. 100–110), the Special Master found that Cottingham presented "no evidence" that supported the petition's assertion that the Gardasil® vaccination caused K.C.'s injuries. J.A. 109.[2]

---

[2]    While the Special Master issued three decisions in this case, we review only the June 20, 2019, decision. *See* Vaccine Rule 28.1(b) ("Unless otherwise specified in the

The Special Master concluded that, "because Ms. Cottingham has not produced any medical records or medical opinions supporting the claim that the vaccination caused any harm," she fails to meet the reasonable basis standard for receiving attorneys' fees. *Id.* at 109 n.3. We conclude that the Special Master's determination constitutes an abuse of discretion because it rests on a clearly erroneous fact finding.

This Court reviews a special master's denial of attorneys' fees and costs under the same standard as the Claims Court and determines if the special master's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Rodriguez v. Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011); *see also* 42 U.S.C. § 300aa-12(e)(2)(B). We review de novo the Special Master's application of the law. *Simmons*, 875 F.3d at 635. An abuse of discretion occurs if the decision is clearly unreasonable, arbitrary, or fanciful; is based on an erroneous conclusion of law; rests on clearly erroneous fact findings; or involves a record that contains no evidence on which the Board could base its decision. *In re Durance*, 891 F.3d 991, 1000 (Fed. Cir. 2018).

Section 15(e) of the Vaccine Act explains that a nonprevailing petitioner must have "a reasonable basis for the claim for which the petition was brought" to be eligible for attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). The petition must include "an affidavit, and supporting documentation, demonstrating that the person who suffered such injury":

(1)  received a vaccine listed on the Vaccine Injury Table;

---

remand order, the decision on remand constitutes a separate decision for purposes of Vaccine Rules 11, 18, and 23.").

(2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;

(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;

(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and

(5) has not previously collected an award or settlement of a civil action for damages for the same injury.

§ 300aa-11(c)(1). Here, the parties' dispute centers on element three. Because causation is a necessary element of a petition, Cottingham must point to evidence of a causal relationship between the administration of the vaccine and her injuries in order to establish that a reasonable basis for the claim existed when the petition was filed. *See* § 300aa-11(c)(1)(C)(ii). The burden of proof to establish reasonable basis for attorney fees, however, is lower than the preponderant evidence standard required to prove entitlement to compensation. *See* § 300aa-15(e)(1); *see also Chuisano*, 116 Fed. Cl. at 287. Indeed, more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis.

In this case, the Special Master found that Cottingham provided "no evidence" of causation. J.A. 109. Cottingham argues on appeal that K.C.'s under-oath affidavit and the objective medical evidence of K.C.'s injury provide objective evidence of a reasonable basis of causation. Appellant Br. at 20–25. We conclude that the Special Master's finding is clearly erroneous because the record does contain objective evidence of causation supporting a reasonable basis.

K.C.'s medical records paired with the Gardasil® package insert constitutes objective evidence supporting

causation. Appellant Br. 22–23. Objective medical evidence, including medical records, can constitute evidence of causation supporting a reasonable basis. *See Harding v. Sec'y of Dep't of Health & Human Servs.*, 146 Fed. Cl. 381, 403 (Fed. Cl. 2019). Medical records can support causation even where the records provide only circumstantial evidence of causation. *Id.* Here, the record contains seven medical-examination reports detailing K.C.'s medical history that address injuries she suffered. J.A. 35, 36, 60, 61, 62, 63–65. The Gardasil® package insert (J.A. 37–59)[3] links K.C.'s injuries to adverse reactions associated with Gardasil's® administration. The package insert contains a section titled "Adverse Reactions," which identifies dizziness, headaches, vomiting, and syncope as adverse reactions to the Gardasil® vaccination. J.A. 40–46. K.C.'s medical records report that she suffered each of those injuries after receiving the Gardasil® vaccine. J.A. 32–34; J.A. 35, 36, 60, 61, 62, 63–65. K.C.'s medical records paired with the Gardasil® package insert thus constitute at minimum circumstantial, objective evidence supporting causation.

Cottingham argues on appeal that medical literature connecting K.C.'s symptomology to her vaccination constitutes objective evidence supporting causation. Appellant Br. 17–18. Cottingham did not, however, submit these articles in her petition or at any time during the proceeding. Nor did Cottingham argue at any time during that long proceeding that medical literature supported the petition or a reasonable basis. We note that the articles are not in the appellate record despite their availability prior to Cottingham's October 7, 2016, dismissal of the petition. *See*

---

[3] Although the Special Master did not address Gardasil's® package insert in its decision, it was included in the appellate record, and no party has contended that it was not part of the record below. *See* Fed. R. App. P. 10(a)(1).

J.A. 2. We therefore decline to consider these articles for the first time on appeal. *See Hylete LLC v. Hybrid Athletics, LLC*, 931 F.3d 1170, 1174–75 (Fed. Cir. 2019).

Cottingham also argues that the Special Master failed to consider Gardasil's® novelty as evidence of reasonable basis. Appellant Br. 17–20. The Secretary argues that post *Simmons*, "this aspect of the [Claims Court's] holding is no longer good law." Appellee Br. 15 n.3.

The Claims Court has identified novelty as a factor in determining reasonable basis. *See Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018) (citing *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1332 n.4 (Fed. Cir. 2011) (en banc); *see also Cottingham v. Sec'y of Health & Human Servs.*, 134 Fed. Cl. 567, 574 (2017) (mentioning novelty as a factor in determining reasonable basis but providing no such analysis). Cottingham cites *Amankwaa* as supporting its argument that the Claims Court must analyze novelty. Appellant Br. 15, 17. But *Amankwaa* imposes no such requirement. The court in *Amankwaa* acknowledged that novelty could be considered in the reasonable basis analysis. *Amankwaa*, 138 Fed. Cl. at 289. The court did not, however, explain how novelty impacted its reasonable basis analysis. *Id.*

*Amankwaa's* reference to novelty cites to our decision in *Cloer*. *See id.* In *Cloer*, we neither adopted nor rejected novelty as a factor in determining reasonable basis. We recognized the difficulty of proving causation where the injuries are alleged to have been caused by the administration of novel vaccines. We concluded that petitioners can still "muster enough evidence to receive compensation" notwithstanding those difficulties. *Cloer*, 654 F.3d at 1332. Cottingham misinterprets *Amankwaa*, and we see no basis to the argument that *Amankwaa* imposes a requirement that special masters must consider a vaccine's novelty in a reasonable basis analysis. We decline to impose such a requirement here.

We also reject the Secretary's argument that *Simmons* precludes the Claim Court from relying on novelty as a factor in the reasonable basis analysis. As discussed above, *Simmons* held that evidence of attorney conduct and a looming statute of limitations "has no bearing on" the reasonable basis analysis. *Simmons*, 875 F.3d at 636. *Simmons* did not address the Claims Court's reliance on novelty as a factor in the reasonable basis analysis and, thus, did not abrogate a special master's discretion to analyze novelty.

Based on our review of the record, we conclude that the Special Master's finding that Cottingham presented "no evidence" of a reasonable basis supporting her claim is clearly erroneous. To be clear, we make no determination on the weight of the objective evidence in the record or whether that evidence establishes reasonable basis, for these are factual findings for the Special Master and not this court. *See Milik v. Sec'y of Health & Human Servs.*, 822 F.3d 1367, 1376 (Fed. Cir. 2016) ("[W]e do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder.") (citation and internal quotation omitted).

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. Because the Special Master abused his discretion, we vacate and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

## COSTS

Costs to Appellant.